**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AMAZON.COM, INC. EBOOK ANTITRUST LITIGATION | Case No. 1:21-cv-351-GHW-DCF <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY IN FURTHER SUPPORT OF PUBLISHER DEFENDANTS' MOTION TO**
**<u>DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

I.      Plaintiffs Do Not Allege Direct Evidence of a Horizontal Agreement ...............................3

II.     Plaintiffs Do Not Allege Indirect Evidence Sufficient to Infer a Conspiracy .....................4

        A.     Plaintiffs Do Not Allege Circumstantial Evidence of a Horizontal Agreement................................................................................................................4

        B.     Plaintiffs Do Not Allege Plus Factors Sufficient to Support a Plausible Inference of Conspiracy..........................................................................................6

        C.     Plaintiffs Do Not Allege Facts Sufficient to Show a Conspiracy Claim Under the Rule of Reason .......................................................................................9

III.    Plaintiffs Do Not Allege Facts Sufficient to Show a Conspiracy to Monopolize .............10

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**         **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 1

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 5, 6

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*,
  602 F.3d 237 (3d Cir. 2010) ..................................................................................................... 3

*In re Elec. Books Antitrust Litig.*,
  859 F. Supp. 2d 671 (S.D.N.Y. 2012) ....................................................................................... 7

*K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*,
  61 F.3d 123 (2d Cir. 1995) ....................................................................................................... 9

*MacDermid Printing Sols. LLC v. Cortron Corp.*,
  833 F.3d 172 (2d Cir. 2016) ..................................................................................................... 9

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018) ............................................................................................................ 10

*Standard Oil Co. v. United States*,
  337 U.S. 293 (1949) ................................................................................................................ 10

*United States v. Apple*,
  791 F.3d 290 (2d Cir. 2015) ............................................................................................ 3, 4, 7

*United States v. Apple*,
  952 F. Supp. 2d. 638 (S.D.N.Y. 2013) ............................................................................ 3, 5, 10

**PRELIMINARY STATEMENT**

Despite their almost 50-page effort[1] to explain and amplify their Amended Complaint, Plaintiffs still have not pled a plausible antitrust conspiracy claim.

*First*, Plaintiffs fail to plead facts supporting an actual agreement among Publisher Defendants (i.e., "direct" evidence) or from which such an agreement could plausibly be inferred (i.e., "indirect" evidence). At most, Plaintiffs' factual allegations show that Publisher Defendants signed individual contracts with Amazon that contained similar terms.

*Second*, Plaintiffs fail to allege any facts showing that any Publisher Defendant's agreement with Amazon had a market-wide anticompetitive effect or that any Publisher Defendant has market power sufficient to produce such an effect, as required for a rule of reason conspiracy claim.

*Finally*, Plaintiffs' allegations are facially implausible as they ignore context and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663–664 (2009) ("[W]hether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense."). Plaintiffs ask the Court to set common sense aside and accept that Defendants hatched a conspiracy under the close oversight of the U.S. Department of Justice ("DOJ") to "confer a monopoly" on Amazon, Opp. at 40, a facially implausible notion and purpose. Under consent decrees entered by this Court, DOJ received and reviewed—but did not object to—each of the Publisher Defendants' eBook agreements with Amazon that contained the key terms about which Plaintiffs complain.[2] Then, without any facts to support their claim, Plaintiffs ask the Court

---

[1] ECF No. 123, Plaintiffs' Consolidated Opposition to Amazon's and Publisher Defendants' Motions to Dismiss Plaintiffs' Consolidated Amended Complaint ("Opposition" or "Opp.").

[2] Plaintiffs assert that the consent decrees "specifically state" that DOJ's failure to bring an action to challenge any eBook agreement or terms "shall n[ot] give rise to any inference of lawfulness." Plaintiffs miss the central point: it is not plausible to infer from the threadbare facts presented that Publisher Defendants, knowing that their every move was subject to DOJ oversight, would conspire to violate the consent decrees and expose themselves to contempt

- 1 -

to infer that Publisher Defendants simply continued the alleged conspiracy at issue in the decade-old *Apple* case, replacing Apple with Amazon as their alleged co-conspirator. But they never address the facial implausibility of that claim: *Apple* centered on an alleged conspiracy of certain publishers to counter Amazon by limiting its ability to compete on price with Apple, a new entrant, while Plaintiffs' alleged conspiracy asserts that the Publisher Defendants sought to "confer a monopoly" on Amazon, a diametrically opposite goal. Plaintiffs provide no plausible explanation for this alleged reversal. Moreover, Plaintiffs' "continuous conspiracy" theory runs headlong into the fact that each publisher defendant in *Apple* undisputedly exited that alleged conspiracy no later than the date on which it entered into its consent decree with DOJ. Plaintiffs cannot leverage the alleged conspiracy in *Apple* into an inference of conspiracy here. *Iqbal* commands rejection of Plaintiffs' request that the Court cast context and common sense aside.

Plaintiffs argue that the Motions to Dismiss[3] present a choice between plausible inferences—theirs versus those offered by Defendants. But there is no choice. Plaintiffs ask the Court to infer an utterly implausible conspiracy, and the few threadbare facts pled do not support it. Accordingly, the Amended Complaint should be dismissed.

---

proceedings. Moreover, Plaintiffs misquote the consent decrees; the cited language makes clear that no inference of lawfulness arises from DOJ's failure to bring an action to "challenge the formation or material modification of [a] joint venture" related to eBooks. Macmillan DOJ Final Judgment § IV.C; Penguin DOJ Final Judgment § IV.C; Hachette, HarperCollins, and Simon & Schuster DOJ Final Judgment § IV.C. This language is irrelevant here as it says nothing about how a court should evaluate a naked allegation of a conspiracy allegedly conducted under DOJ's watch.

[3]  ECF No. 99, Memorandum of Law in Support of Amazon's Motion to Dismiss Plaintiffs' Consolidated Amended Complaint; ECF No. 100, Memorandum of Law in Support of Publisher Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint ("Publishers' Motion").

**ARGUMENT**

**I.     Plaintiffs Do Not Allege Direct Evidence of a Horizontal Agreement**

Plaintiffs' Amended Complaint and Opposition offer no direct evidence of a horizontal conspiracy among Publisher Defendants—because there is none. Plaintiffs allege no direct evidence of an agreement or even hypothetical communications among Publisher Defendants. The only "direct" evidence that Plaintiffs cite are the vertical agreements between each Publisher Defendant and Amazon. Opp. at 5–6. Absent any factual allegations of coordination or communications among Publisher Defendants or through Amazon, these vertical agreements, which Plaintiffs acknowledge were negotiated and entered separately over more than nine months, fail to support a conspiracy claim. *See Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010).

Plaintiffs misinterpret *Apple* as holding that agency agreements with MFNs are *per se* illegal or direct evidence of a conspiracy. Opp. at 6. What the *Apple* court found to be illegal was <u>coordination</u> among the defendants there to switch all eBook retailers from a wholesale model to an agency model to protect Apple from reseller price competition, not the agency agreements[4] or MFNs themselves. *See United States v. Apple*, 952 F. Supp. 2d 638, 698 (S.D.N.Y. 2013) ("[T]his Court has not found, that the agency model for distribution of content, or any one of the clauses included in the Agreements . . . is inherently illegal. Indeed, entirely lawful contracts may include an MFN[.]"). Plaintiffs have alleged no facts showing such coordination among Defendants here.[5]

---

[4]  In fact, the DOJ consent decrees approved by that court expressly allowed the defendants to enter into agency agreements. Macmillan DOJ Final Judgment § VI.B; Penguin DOJ Final Judgment § VI.B; Hachette, HarperCollins, and Simon & Schuster DOJ Final Judgment § VI.B.

[5]  Similarly, Plaintiffs mischaracterize language from the Second Circuit's *Apple* decision ("*Apple II*") to wrongly assert that absent proof of horizontal communications, "the very act of signing" an agreement with Amazon is sufficient to show a commitment by each Publisher Defendant to conspire with Amazon. Opp. at 31. *Apple II* actually states that "[b]y the very act of signing a Contract with Apple containing an MFN Clause, … each of the Publisher Defendants signaled a clear commitment to move against <u>Amazon</u>…." *United States v. Apple*, 791 F.3d 290, 317 (2d Cir. 2015) (emphasis added), a conclusion supported by direct evidence of horizontal communications among certain

- 3 -

## II.   Plaintiffs Do Not Allege Indirect Evidence Sufficient to Infer a Conspiracy

### A.   Plaintiffs Do Not Allege Circumstantial Evidence of a Horizontal Agreement

Plaintiffs also fail to allege any indirect evidence leading to a plausible inference of conspiracy. Plaintiffs' lone attempt at pleading "communications" among Publisher Defendants are their allegations citing a handful of news stories about the 2014 and 2015 agency agreements between each Publisher Defendant and Amazon. Opp. at 11–12. But these third-party articles indicate only that each Publisher Defendant independently entered into an agency agreement with Amazon at a distinct point in time. *See* Publishers' Motion at 9. Plaintiffs allege that these "signals" indicated that the agency model would "be acceptable for Amazon only with MFN commitments," Opp. at 12, but none of the cited articles say anything about the supposed MFNs or any other provisions in the alleged agreements. Indeed, Plaintiffs concede that the alleged MFN provisions "were not labeled MFNs" and "were not publicly disclosed." *Id*. at 12–13.

Recognizing the dearth of facts suggesting coordination among Publisher Defendants, Plaintiffs claim that they can adequately plead a conspiracy by alleging that Publisher Defendants: (1) knew that the other Publisher Defendants were agreeing to the same terms; and (2) agreed to those terms because they knew the other Publisher Defendants were also doing so. Opp. at 16 n.37, 31. But Plaintiffs fail to show either prong. *First*, Plaintiffs have pled no facts showing that any Publisher Defendant knew the terms of any other Publisher Defendant's agreement with Amazon. Unlike *Interstate Circuit* or *Apple II*, the main cases on which Plaintiffs rely, Plaintiffs offer no facts showing coordination or "conscious[ ] orchestrat[ion]" by Amazon that would have made clear to Publisher Defendants that it was offering each of them similar terms. *Apple II*, 791 F.3d at 316. *Second*, Plaintiffs have pled no facts showing that any Publisher Defendant agreed to

---

publishers about that objective. Unsupported by any direct evidence, Plaintiffs' citation undermines their theory that Publisher Defendants' agreements with Amazon demonstrated a commitment to conspire with Amazon.

- 4 -

any terms because it knew other Publisher Defendants were doing so.  Plaintiffs' conclusory assertion that each Publisher Defendant's agreement was contingent on the participation of others is plainly insufficient.  *See* Opp. at 31.

Similarly, Plaintiffs incorrectly claim that under *Twombly* and *Starr*, they only need to allege that "some setting" for collusion existed, not any details about the specific time, place, or persons involved in the alleged conspiracy.  Opp. at 7–8.  But alleging a plausible setting requires at least some specificity—and Plaintiffs offer none.  *See* Publishers' Motion at 7.  Unlike *Apple*, Plaintiffs do not allege any specific facts that Publisher Defendants had even an <u>opportunity</u> to meet or conspire at any time during the alleged relevant period.  *See Apple*, 952 F. Supp. 2d at 651.

Finally, Plaintiffs misstate key facts about Publisher Defendants' 2014 and 2015 agreements and negotiations with Amazon to suggest that they provide circumstantial support for Plaintiffs' implausible conspiracy claim.  *First*, Plaintiffs claim that these agreements re-introduced the agency model.  Opp. at 15.  They did not.  The agency model has existed since 2010; indeed, the DOJ consent decrees specifically allowed the agency model to continue.  *See supra* n.4.[6]  The 2014 and 2015 agency agreements did not present a "complex and historically unprecedented change[] in pricing structure"—they continued the use of the agency model.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.4 (2007).  *Second*, Plaintiffs falsely speculate—based on no facts—that Publisher Defendants sought the alleged "MFN-like" notification provisions in their agreements with Amazon.  *See* Opp. at 11–13 (suggesting that Publisher Defendants "reintroduced . . . MFN-equivalent provisions").  But Plaintiffs themselves undermine this false claim by alleging that Amazon "continues to impose contract provisions that effectively function as MFNs on book publishers."  Opp. at 13 (quoting a House Judiciary Committee report).

---

[6] The main relevant difference in the agency agreements effective during 2013 to 2015 was that, as ordered by the DOJ consent decrees, retailers could use their commission to discount off each publisher's eBook list prices.  *See id.*

The mere fact that Publisher Defendants may have agreed to similar provisions after negotiations with the same crucial retailer does not support an inference that each Publisher Defendant sought the provisions or that Publisher Defendants conspired with each other to collectively agree to them. If Publisher Defendants' eBook agreements with Amazon have similar provisions, it only shows "independent responses to common stimuli." *Twombly*, 550 U.S. at 556 n.4.

### B. Plaintiffs Do Not Allege Plus Factors Sufficient to Support a Plausible Inference of Conspiracy

Further, Plaintiffs fail to allege "plus factors" that would allow the court to plausibly infer a conspiracy. Opp. at 17–25.

***Shared motives to collude***. Plaintiffs argue that conspirators do not need "identical motives" to collude and that Defendants "shared twin motives to collude": Amazon's motive to dominate the eBook retail market and Publisher Defendants' motive to regain control of eBook pricing. Opp. at 19–20. Even accepting Plaintiffs' characterization of these alleged goals as "motives to collude" and that Defendants do not need identical motives, their motives cannot be contradictory. Plaintiffs fail to plausibly allege how it would be in any Publisher Defendant's interest to install Amazon as a downstream monopolist that could then dictate terms to them (by definition). Nor have Plaintiffs alleged any facts plausibly suggesting that any Publisher Defendant "shared" Amazon's purported motive to dominate the eBook retail market or separately sought to "regain control" of eBook pricing.

***Acting against individual interests***. Without any factual support, Plaintiffs generally assert that entering into any agency model agreement with Amazon that allegedly contained MFN-like provisions would be against each Publisher Defendant's independent business interests, and therefore, no Publisher Defendant would have entered such an agreement with Amazon without any assurance of similar behavior by its rivals. Opp. at 20–21.

Plaintiffs' only attempt to support these allegations is their rote recitation of certain factual findings from the *eBooks* case, a follow-on class action to the *Apple* case, that do not apply here. There, certain publishers allegedly colluded to support Apple because they purportedly feared that, absent coordination, Amazon might "'retaliate' against insubordinate publishers 'by removing the "buy buttons" on the Amazon site that allow customers to purchase books . . . or by eliminating [a publisher's] products from its site altogether.'" *Apple II*, 791 F.3d at 342 (Jacobs, J., dissenting) (citing *Apple*, 952 F. Supp. 2d at 679). Thus, the court found that each publisher's "decision to sign its particular agency agreement with Apple and to demand that Amazon accept the agency model would have contravened that defendant's self-interest in the absence of similar behavior by its rivals." *In re Elec. Books Antitrust Litig.*, 859 F. Supp. 2d 671, 683–684 (S.D.N.Y. 2012).

Here, in contrast, Plaintiffs' own allegations show that it was in each Publisher Defendant's individual business interest to enter an agreement with Amazon, even if it disliked some terms, to preserve its ability to sell eBooks through the largest eBook retailer in the United States. There was thus no need for collective action. Indeed, if the other Publisher Defendants had declined to enter an agreement with Amazon, the Publisher Defendant that signed an agreement with Amazon would have had a distinct market advantage, a fact that entirely negates Plaintiffs' assertion.

Further, the Amended Complaint cites material that demonstrates how Publisher Defendants competed rather than conspired against their individual interests. For example, one article cited by Plaintiffs indicates that Simon & Schuster was able to enter into an agreement with Amazon while Amazon was in conflict with Hachette: "An Amazon spokesperson said the -e-tailer [sic], which is engaged in a protracted and public battle with Hachette Book Group over e-book terms, is 'pleased' to have reached an agreement with S&S." *See* CAC ¶ 67 n.91. One Publisher Defendant leapfrogging another to sign a deal with the leading eBook retailer contradicts

any suggestion that Publisher Defendants conspired against their individual interests.

*Market concentration*.  Plaintiffs claim that the eBook retail market is concentrated.  Opp. at 19.  Yet they offer no allegations about each Publisher Defendant's share in any eBook market.  Plaintiffs only describe Amazon's alleged market share in the eBook retail market, not Publisher Defendants' share.  CAC ¶ 131.  Plaintiffs' only market share allegations with respect to any Publisher Defendant relate to trade books, not eBooks, which is insufficient.  CAC ¶¶ 1, 38.

*History of collusion*.  Plaintiffs argue that a past conspiracy in a market may be relevant where there is "other evidence of a present conspiracy" in that market.  Opp. at 23–24.  But, as shown above and in Publishers' Motion, Plaintiffs offer no other evidence of a present conspiracy.  Plaintiffs misleadingly state that pending "investigations into Defendants' current practices" provide further evidence of a present conspiracy, but they only cite investigations into Amazon's conduct.  Opp. at 24–25.  Government investigations into Amazon's conduct cannot give rise to an inference of Publisher Defendants conspiring.  *See* Publishers' Motion at 15–16.

*Attempt to hide MFNs from regulators*.  Finally, Plaintiffs desperately allege that Defendants attempted to "hide" their supposed MFNs from antitrust enforcers by "disguising" them.  Opp. at 25.  The exact opposite is true.  Rather than hiding any terms, each Publisher Defendant submitted its eBook agreements to DOJ for its review under the terms of the consent decrees, including all five of the 2014 and 2015 agreements alleged to contain MFN-like provisions.  *See* Publishers' Motion at 14–15; CAC ¶¶ 67–71.  DOJ reviewed each of these five agreements, and as the public record shows, it did not object to or challenge them.  The suggestion that DOJ did not understand the alleged notification provisions, which Plaintiffs baselessly claim were disguised MFNs, is unfounded and ridiculous.  Opp. at 30.[7]

---

[7]  More generally, Plaintiffs' allegations as to who had knowledge of the supposed MFNs are unsupported and contradictory: on one hand, they falsely allege that Publisher Defendants were hiding MFN-like provisions in

### C. Plaintiffs Do Not Allege Facts Sufficient to Show a Conspiracy Claim Under the Rule of Reason

Plaintiffs' Amended Complaint and Opposition also fail to allege facts that support a plausible conspiracy claim under the rule of reason. To do so, Plaintiffs must show either direct evidence of harm to "competition market-wide," *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 127–129 (2d Cir. 1995), or that Defendants have market power, "'plus some other ground for believing that the challenged behavior' has harmed competition." *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 182 (2d Cir. 2016). They show neither.

***Direct evidence of market-wide harm to competition***. Plaintiffs argue that the price charts in the Amended Complaint meet their burden of plausibly alleging market-wide harm to competition. Opp. at 36-37. But to show such harm, Plaintiffs must show that an individual Publisher Defendant's agreement with Amazon had a market-wide effect, i.e., that it caused other publishers to raise their prices. Plaintiffs' pricing charts allege the opposite: when each Publisher Defendant entered into its eBook agreement with Amazon, only that Publisher Defendant's eBook prices changed. Plaintiffs plead no facts linking one Publisher Defendant's eBook pricing or contracting decisions to any other Publisher Defendant's eBook pricing or contracting decisions. *See* Publishers' Motion at 21.

***Market power***. Plaintiffs also fail to show that any Publisher Defendant has market power. Plaintiffs' attempt to challenge the simple math used in *Bookhouse* to test for market power misstates Supreme Court precedent. Neither of the two cases Plaintiffs cite suggest that absent evidence of a conspiracy, it is appropriate to aggregate <u>multiple Publisher Defendants'</u> agreements to show market power. *Standard Oil* only indicates that it may be appropriate to aggregate an

---

agreements they disclosed in full to antitrust authorities, while on the other, they allege that the purported "signals," which disclosed nothing about the supposed MFNs or MFN-like terms, are sufficient to show that each Publisher Defendant had knowledge of the terms of the other Publisher Defendants' agreements.

individual defendant's agreements to show market power for a Clayton Act Section 3 claim. *Standard Oil Co. v. United States*, 337 U.S. 293, 295, 314 (1949). And *Amex* says nothing about using market shares to show market power. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018).

### III.     Plaintiffs Do Not Allege Facts Sufficient to Show a Conspiracy to Monopolize

As explained above and in greater detail in Publishers' Motion, Plaintiffs fail to allege any evidence of a horizontal conspiracy, much less a conspiracy to enable Amazon to monopolize the eBook retail space. This alone dooms Plaintiffs' conspiracy to monopolize claim.

Plaintiffs' Opposition proffers two ill-founded arguments to support their illogical conspiracy to monopolize claim. *First*, Plaintiffs allege that Publisher Defendants feared Amazon's market power, but from that fact, Plaintiffs draw the implausible conclusion that this fear inspired Publisher Defendants to conspire to increase that same market power. Opp. at 28–29, 41. Notably, this is one time Plaintiffs disregard the findings of the *Apple* court, which found that Publisher Defendants' fear of Amazon's growing power led them to collude with a new entrant to counter Amazon's power. *Apple*, 952 F. Supp. 2d at 649–650. *Second*, Plaintiffs falsely claim that Publisher Defendants helped Amazon maintain its alleged monopoly in the eBook retail space in exchange for control of eBook pricing. This quid pro quo is invented, and Plaintiffs offer no facts to support its existence. If *Apple* shows anything, it is that Publisher Defendants have resisted entrenching Amazon's market position for years. It is not in Publisher Defendants' interest to have a monopolist retailer; as Plaintiffs allege, it is in each Publisher Defendant's economic self-interest to "diversify their distribution." Opp. at 40 (citing CAC ¶ 149).

### CONCLUSION

For the foregoing reasons, as well as those outlined in Publishers' Motion, Publishers' Motion should be granted, and Plaintiffs' Amended Complaint should be dismissed with prejudice.

Dated:  December 1, 2021

/s/ Jennifer B. Patterson
Jennifer B. Patterson
Saul P. Morgenstern
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 W. 55th Street
New York, NY 10019
Telephone: (212) 836-8740
Facsimile: (212) 836-8689
jennifer.patterson@arnoldporter.com
saul.morgenstern@arnoldporter.com

*Attorneys for Defendant Penguin Random House LLC*

Respectfully submitted,

/s/ C. Scott Lent
C. Scott Lent
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 W. 55th Street
New York, NY 10019
Telephone: (212) 836-8220
Facsimile: (212) 836-8689
scott.lent@arnoldporter.com

*Attorney for Defendant HarperCollins Publishers LLC*

/s/ Rich Snyder
Rich Snyder
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
Telephone: (202) 777-4565
Facsimile: (202) 507-5965
richard.snyder@freshfields.com

*Attorney for Defendant Hachette Book Group, Inc.*

/s/ Joel Mitnick
Joel Mitnick
**CADWALLER, WICKERSHAM & TAFT LLP**
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6555
Facsimile: (212) 504-6666
joel.mitnick@cwt.com

*Attorney for Defendant Macmillan Publishing Group, LLC*

*Privileged & Confidential*
*Attorney Work Product*

 /s/ Yehudah L. Buchweitz
Yehudah L. Buchweitz
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256
Facsimile: (212) 310-8007
yehudah.buchweitz@weil.com

Jeff L. White
2001 M Street, NW
Washington, DC 20036
Telephone: (202) 682-7059
Facsimile: (202) 857-0940
jeff.white@weil.com

*Attorneys for Defendant Simon & Schuster, Inc.*