**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE AMAZON.COM, INC. EBOOK
ANTITRUST LITIGATION

Case No. 1:21-cv-351-GHW-DCF

**PUBLISHER DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'**
**OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

STANDARD OF REVIEW ....................................................................................................2

ARGUMENT ..........................................................................................................................3

I.      The Magistrate Judge Correctly Concluded that Plaintiffs Failed to Plead a
        Conspiracy Under Section 1 ......................................................................................3

        A.      Plaintiffs Fail to Plausibly Plead that the Alleged Conspiracy Is a
                Continuation of the *Apple* Conspiracy ....................................................3

        B.      Plaintiffs Fail to Plead Indirect Evidence from Which a Conspiracy Could
                Plausibly Be Inferred ..................................................................................8

                1.      Plaintiffs Fail to Plead Circumstantial Evidence of a Horizontal
                        Agreement Among the Publisher Defendants...............................8

                2.      Plaintiffs Fail to Plead Plus Factors Sufficient to Support a Plausible
                        Inference of Conspiracy ..............................................................11

II.     The Magistrate Judge Correctly Concluded that Plaintiffs Failed to Plead a
        Section 1 Claim Under the Rule of Reason ............................................................17

        A.      Agency Agreements with MFNs Are Not Inherently Illegal.................17

        B.      Plaintiffs Fail to Plausibly Allege Direct Evidence of Harm Sufficient to
                Support a Rule of Reason Claim............................................................18

        C.      Plaintiffs Fail to Plausibly Allege that Any Publisher Defendant Has
                Market Power........................................................................................20

III.    The Magistrate Judge Correctly Concluded that Plaintiffs Failed to Plead a
        Conspiracy to Monopolize......................................................................................21

        A.      Plaintiffs Misstate the Legal Standard for a Conspiracy to Monopolize
                Claim....................................................................................................21

        B.      Plaintiffs Fail to Plausibly Allege Concerted Action Among the Publisher
                Defendants ...........................................................................................21

        C.      Plaintiffs Fail to Plausibly Allege that Any Publisher Defendant Had a
                Specific Intent to Confer Monopoly Power on Amazon .......................22

CONCLUSION.....................................................................................................................23

US 172556755

## <u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>                                                                                           <u>**Page(s)**</u>

*Applied Med. Res. Corp. v. Johnson & Johnson*,
  No. SACV 03-1329-JVS, 2004 U.S. Dist. LEXIS 29409 (C.D. Cal. Feb. 23,
  2004) ..................................................................................................................19

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com*,
  985 F. Supp. 2d 612 (S.D.N.Y. 2013)..............................................................19, 20

*Chen v. New Trend Apparel Inc.*,
  8 F. Supp. 3d 406 (S.D.N.Y. 2014)........................................................................2

*Dickson v. Microsoft Corp.*,
  309 F.3d 193, 203-04 (4th Cir. 2002))....................................................................8

*Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*,
  288 F. Supp. 2d 325 (E.D.N.Y. 2003) ..............................................................4, 7, 8

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*,
  129 F.3d 240 (2d Cir. 1997)..................................................................................21

*Genico, Inc. v. Ethicon, Inc.*,
  No. 5:04-cv-229, 2006 U.S. Dist. LEXIS 96 (E.D. Tex. Mar. 23, 2006) ..............20

*Giraldo v. Kessler*,
  694 F.3d 161 (2d Cir. 2012)....................................................................................5

*Hubbard v. Kelley*,
  752 F. Supp. 2d 311 (W.D.N.Y. 2009) ................................................................2, 4

*IHS Dialysis Inc. v. Davita, Inc.*,
  No. 12-cv-2468, 2013 WL 1309737 (S.D.N.Y. Mar. 31, 2013).............................22

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  No. 1:13-cv-7789, 2022 WL 294118 (S.D.N.Y. Feb. 1, 2022) ..............................21

*In re Zinc Antitrust Litig.*,
  155 F. Supp. 3d 337 (S.D.N.Y. 2016)......................................................................8

*K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*,
  61 F.3d 123 (2d Cir. 1995)....................................................................................18

*Laumann v. NHL*,
  907 F. Supp. 2d 465 (S.D.N.Y. 2012).....................................................................8

US 172556755

*Matter of Hapag-Lloyd Aktiengesellschaft*,
   No. 1:19-cv-5731, 2022 WL 1204809 (S.D.N.Y. Apr. 22, 2022) ...........................................2

*McDonaugh v. Astrue*,
   672 F. Supp. 2d 542 (S.D.N.Y. 2009) ....................................................................................2

*Molefe v. KLM Royal Dutch Airlines*,
   602 F. Supp. 2d 485 (S.D.N.Y. 2009) ....................................................................................2

*Orchard Supply Hardware LLC v. Home Depot USA*,
   967 F. Supp. 2d 1347 (N.D. Cal. 2013) ................................................................................19

*Sitts v. Dairy Farmers of America, Inc.*,
   417 F. Supp. 3d 433 (D. Vt. 2019) .......................................................................................19

*Starr v. Sony BMG Music Entm't*,
   592 F.3d 314 (2d Cir. 2010) ..........................................................................................15, 16

*Travelers Ins. Co. v. Est. of Garcia*,
   No. 00-cv-2130, 2003 WL 1193535 (E.D.N.Y. Feb. 4, 2003) ...............................................2

*United States v. Apple*,
   952 F. Supp. 2d 638 (S.D.N.Y. 2013) ..................................................................................18

*United States v. Apple*,
   791 F.3d 290 (2d Cir. 2015) .......................................................................................6, 8, 15

*United States v. Gladden*,
   394 F. Supp. 3d 465 (S.D.N.Y. 2019) .................................................................................2, 4

*United States v. Greenfield*,
   44 F.3d 1141 (2d Cir. 1995) ...................................................................................................4

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) ................................................................................................................4

*Virginia v. McKesson Corp.*,
   No. C 11–02782 S, 2013 WL 1287423 (N.D. Cal. Mar. 28, 2013) ........................................4

*Wright v. Duncan*,
   31 F. Supp. 3d 378 (N.D.N.Y. 2011), *aff'd*, 500 F. App'x 36 (2d Cir. 2012) ..........................2

## Statutes

28 U.S.C. § 636(b)(1) ....................................................................................................................2

28 U.S.C. § 636(b)(1)(A) ...............................................................................................................2

- iii -

**<u>Other Authorities</u>**

FED. R. CIV. P. 72(b)(3) ................................................................................................................2

PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW: AN ANALYSIS OF
    ANTITRUST PRINCIPLES AND THEIR APPLICATION, ¶ 1402c (3d ed. 2010) ...............................8

US 172556755

## <u>INTRODUCTION</u>

The Magistrate Judge's well-reasoned Report and Recommendation[1] ("R&R") carefully examined the legal and alleged factual bases Plaintiffs offered in support of their Consolidated Amended Class Action Complaint ("CAC") and rejected each of them.  As explained below, Plaintiffs' Objection[2] does not come close to showing clear error.  Plaintiffs offer the same arguments considered and rejected by the Magistrate Judge and an entirely new argument contradicted by Plaintiffs' own allegations.  To support these arguments, Plaintiffs make only conclusory and frivolous objections, attacking a caricature of the R&R rather than the actual findings and conclusions within it.  Plaintiffs fail to even address several of the Magistrate Judge's central conclusions, including that the Publisher Defendants' agreements with Amazon are not direct evidence of a conspiracy and that there are no allegations of any communications among the Defendants that support Plaintiffs' conspiracy claims.

The Magistrate Judge correctly concluded that the CAC fails to plausibly plead any of the antitrust claims Plaintiffs seek to bring against the Publisher Defendants.  Plaintiffs fail to properly object to the Magistrate Judge's sound reasoning or otherwise meet their burden to state a claim.  Accordingly, the Publisher Defendants respectfully request that the Court adopt the Magistrate Judge's R&R and dismiss the claims against the Publisher Defendants with prejudice.  Plaintiffs have already amended their complaint twice and further amendment would be unwarranted and futile.

---

[1]    ECF No. 161, Report and Recommendation.

[2]    ECF No. 166, Plaintiffs' Objection to the Magistrate Judge's Report and Recommendation ("Objection" or "Obj.").

US 172556755

## STANDARD OF REVIEW

The district court reviews *de novo* any part of the R&R that is "properly objected to," FED. R. CIV. P. 72(b)(3), and may in its discretion "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Proper objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). When there are no objections to a part of a report and recommendation or when a party "makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error." Order, *Matter of Hapag-Lloyd Aktiengesellschaft*, No. 1:19-cv-5731, 2022 WL 1204809, at *1 (S.D.N.Y. Apr. 22, 2022) (Woods, J.) (citing 28 U.S.C. § 636(b)(1)(A) and *Chen v. New Trend Apparel Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014)). Further, district courts in the Second Circuit regularly refuse to consider arguments and case law "which could have been, but were not, presented to the magistrate judge in the first instance." *Wright v. Duncan*, 31 F. Supp. 3d 378, 428 (N.D.N.Y. 2011), *aff'd*, 500 F. App'x 36 (2d Cir. 2012); *see also Travelers Ins. Co. v. Est. of Garcia*, No. 00-cv-2130, 2003 WL 1193535, at *2 (E.D.N.Y. Feb. 4, 2003); *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (quoting *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).

Despite its length, Plaintiffs' Objection does not properly object to any of the R&R's specific findings and conclusions. Accordingly, the Court should review the entire R&R only for clear error. However, even if any parts are reviewed *de novo*, the Court should adopt the R&R because Plaintiffs fail to plausibly plead any of their claims against the Publisher Defendants.

US 172556755

## ARGUMENT

**I.      The Magistrate Judge Correctly Concluded that Plaintiffs Failed to Plead a Conspiracy Under Section 1**

The Magistrate Judge correctly determined that Plaintiffs neither pled direct evidence of a conspiracy, R&R at 22–23, nor circumstantial evidence from which a conspiracy could plausibly be inferred.  R&R at 24–43.  Plaintiffs do not properly object to those specific findings and conclusions.  Instead, they improperly raise a new argument—that the Publisher Defendants' alleged conspiracy with Amazon continues the 2009-10 *Apple* conspiracy that ended with DOJ settlements a decade ago.  They attempt to support this specious argument with rehashed allegations of circumstantial evidence of a horizontal agreement among the Publisher Defendants and recycled plus factor arguments.  Accordingly, the Court should adopt the R&R's conclusion and dismiss the Section 1 conspiracy claim.

### A.      Plaintiffs Fail to Plausibly Plead that the Alleged Conspiracy Is a Continuation of the *Apple* Conspiracy

The Magistrate Judge correctly determined that Plaintiffs failed to allege any direct evidence of a conspiracy.  R&R at 23.  The only direct evidence that Plaintiffs purportedly alleged are the individual vertical agency agreements between each Publisher Defendant and Amazon. R&R at 22 (citing Opp.[3] at 5–6); Oral Arg. Tr.[4] at 51.  The R&R rightly concluded that "[t]he mere fact that the Publishers entered into those agreements with Amazon is not direct evidence of a conspiracy to fix eBook prices and eliminate retail competition."  R&R at 23.  Plaintiffs do not contest this crucial conclusion.

Instead, Plaintiffs argue that they have adequately alleged direct evidence of a conspiracy

---

[3]      ECF No. 123, Plaintiffs' Consolidated Opposition to Amazon's and Publisher Defendants' Motions to Dismiss ("Opp.").

[4]      ECF No. 159, Transcript of Oral Argument before Magistrate Judge Valerie Figueredo ("Oral Arg. Tr.").

US 172556755

by raising an entirely new, unsupported argument.[5]  Plaintiffs try to rope in the direct evidence of

a conspiracy found in the *Apple* case to establish that they adequately alleged direct evidence here.

Incredibly, Plaintiffs argue *for the first time* that the Publisher Defendants "*never withdrew* from

their conspiracy" and that their alleged conspiracy with Amazon is literally a continuation of a

decade-old, long-terminated conspiracy to "counter Amazon's growing power."  Obj. at 3–4, 6–8

(emphasis added); CAC ¶ 42.

The Court should not consider Plaintiffs' new argument because it was not properly raised

before the Magistrate Judge.  *See Gladden*, 394 F. Supp. 3d 465 at 480 (quoting *Hubbard*, 752 F.

Supp. 2d at 313).  Even assuming *arguendo* that Plaintiffs' new argument was properly raised,

Obj. at 3, 6, the Court should reject it as conclusory and unsupported by the facts alleged in the

CAC.  Contrary to Plaintiffs' illogical argument, Obj. at 2, the final judgments in *Apple*

conclusively terminated the *Apple* conspiracy.[6]  As the Publisher Defendants explained during oral

---

[5]    In Section I.B. of the Objection, Plaintiffs also misleadingly repackage some of their purported indirect evidence of a conspiracy as "direct evidence of a hub-and-spoke conspiracy."  Obj. at 8–12.  *First*, Plaintiffs argue that they adequately pled a horizontal agreement necessary to find a hub-and-spoke conspiracy by alleging that each Publisher Defendant knew the other Publisher Defendants had the same eBook distribution agreement with Amazon and entered into its eBook agreement with Amazon contingent on that knowledge.  Obj. at 8–9.  *Second*, Plaintiffs argue that the Publisher Defendants acted against their independent economic interests by entering into their 2014 and 2015 eBook distribution agreements with Amazon.  Obj. at 10–12.  Plaintiffs previously argued that these points provide indirect evidence of a conspiracy, not direct evidence.  *See* Opp. at 15–16, 20–21; Oral Arg. Tr. at 73 ("We do rely on the hub and spoke conspiracy as the primary basis for *inferring* a horizontal agreement.") (emphasis added).  As explained in Section I.B. *infra*, the Magistrate Judge properly found that Plaintiffs failed to plead facts to support either argument or any other indirect evidence sufficient to support a conspiracy claim in any form.

[6]    Plaintiffs make the general point that "the cessation of conspiratorial activity is generally considered insufficient to demonstrate a withdrawal from a conspiracy."  Obj. at 2 n.3 (quoting *United States v. Greenfield*, 44 F.3d 1141, 1149–50 (2d Cir. 1995)).  However, withdrawal from a conspiracy can be established by "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators."  *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65 (1978).  Publicly announced settlements ending conspiracies do just that.  *See, e.g.*, *Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*, 288 F. Supp. 2d 325, 330 (E.D.N.Y. 2003); *Virginia v. McKesson Corp.*, No. C 11–02782 S, 2013 WL 1287423, at *4 (N.D. Cal. Mar. 28, 2013).  Indeed, as Plaintiffs highlight, withdrawal can come from "the making of a clean breast to the authorities."  Obj. at 2 (quoting *Greenfield*, 44 F.3d at 1149–50).  That is precisely what happened here.  The Publisher Defendants took affirmative acts to end the *Apple* conspiracy by agreeing to consent decrees.  Under those decrees, DOJ and certain state attorneys general received and reviewed all the Publisher Defendants' eBook agreements, including the agreements at issue here, and their key communications related to eBook plans or strategies to ensure that no

- 4 -

argument, the papers filed in this Court along with the *Apple* final judgments make "crystal clear" that "the publishers exited the conspiracy."  Oral Arg. Tr. at 87.  Judge Cote's order approving entry of the first *Apple* final judgments explicitly states that "[t]he decree is directed narrowly towards undoing the price-fixing conspiracy, ensuring that price-fixing does not immediately reemerge, and ensuring compliance."  Order, *United States v. Apple*, No. 12-cv-2826, at 18 (S.D.N.Y. Sept. 6, 2012).[7]  In effect, Plaintiffs' reasoning would require the Court to disregard the settlement papers in its own docket explaining that the purpose of the *Apple* final judgments was to end the conspiracy, and find it plausible that Judge Cote permitted the conspiracy to continue even after those final judgments were entered.  It would also require the Court to find it plausible that after reviewing the eBook agreements at issue and the Publisher Defendants' communications related to eBook plans and strategy under the *Apple* final judgments, DOJ and certain state attorneys general permitted the conspiracy to continue.  Publishers' Motion at 5, 14–15.

Plaintiffs' claim that the Publisher Defendants never exited the conspiracy is also inconsistent with the allegations in the CAC itself, as well as Plaintiffs' arguments in their opposition brief and at oral argument, that the eBook retail market was competitive and free of collusive pricing after the *Apple* final judgments were entered.  CAC ¶ 99; Opp. at 22–23; Oral Arg. Tr. at 52 ("while Amazon was negotiating contracts with the publishers, prices for their books

---

conspiracy continued.  ECF No. 100, Publisher Defendants' Memorandum in Support of Publisher Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint ("Publishers' Motion") at 5, 14–15.

[7]    The competitive impact statements ("CISs") filed with the proposed final judgments also state that the final judgments ended the *Apple* conspiracy.  As the CISs explain, "[t]he requirements and prohibitions will eliminate the Settling Defendants' illegal conduct [and] prevent recurrence of the same or similar conduct. . . ."  Competitive Impact Statement, *United States v. Apple*, No. 1:12-cv-2826, at 9 (S.D.N.Y. Apr. 11, 2012) ("Hachette, HarperCollins, and Simon & Schuster CIS"); *see also* Competitive Impact Statement, *United States v. Apple*, No. 1:12-cv-2826, at 5 (S.D.N.Y. Dec. 18, 2012) ("Penguin CIS"); Competitive Impact Statement, *United States v. Apple*, No. 1:12-cv-2826, at 5–6 (S.D.N.Y. Feb. 8, 2013) ("Macmillan CIS").  The Court may take judicial notice of the CISs because they are public records filed by DOJ as part of the formal settlement package accompanying the *Apple* final judgments, which Plaintiffs relied on in drafting their complaint and are incorporated by reference into the CAC.  *See* R&R at 28 n.6; Publishers' Motion at 5 n.2; *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (taking judicial notice of "relevant matters of public record").

US 172556755

were highly competitive").  If the conspiracy remained in effect after the *Apple* final judgments were entered, eBook pricing would not have been competitive in the post-judgment period—as the CAC alleged it to be.  Instead, as the order entering the first *Apple* final judgments states: "the proposed Final Judgment appears reasonably calculated to restore retail price competition to the market for trade e-books [and] to return prices to their competitive level . . . ."  Order, *United States v. Apple*, No. 12-cv-2826, at 16 (S.D.N.Y. Sept. 5, 2012).[8]

Moreover, Plaintiffs' new argument ignores the R&R's detailed analysis, which explains why the notion that the alleged conspiracy here simply continues the *Apple* conspiracy is entirely implausible.  *See* R&R at 27–29, 32.  *First*, the R&R explains that Plaintiffs fail to account for the "changed economic reality that followed the Apple conspiracy."  R&R at 27.  In *Apple*, the court found that the publishers had to "move[] together" to force the industry to change from the wholesale model to the agency model.  *United States v. Apple*, 791 F.3d 290, 305 (2d Cir. 2015).  Here, "the Publishers were not attempting to force an industry-wide shift in pricing policy from the wholesale model."  R&R at 28.  The Magistrate Judge correctly found, therefore, that "it cannot plausibly be inferred that the economic incentives that led to collective action in Apple were similarly present at the time of the conspiracy alleged here."  R&R at 28.  *Second*, the R&R explains the illogic of the Publisher Defendants conspiring with Amazon at all.  In *Apple*, "it was Amazon's 'growing power in the trade book industry' that had previously motivated the Publishers to collude with Apple."  R&R at 32 (quoting CAC ¶ 42).  Here, Plaintiffs allege that the Publisher Defendants did an about-face and colluded with Amazon, Publishers' Motion at 4, but as the Magistrate Judge explained, "the CAC offers no plausible explanation for why the Publishers

---

[8]     The CISs similarly explain that the *Apple* final judgments were designed to provide "prompt, certain and effective remedies . . . to restore competition to the marketplace."  Hachette, HarperCollins, and Simon & Schuster CIS at 9; Penguin CIS at 4; Macmillan CIS at 5.

- 6 -

would have been motivated to participate in a conspiracy that further entrenched Amazon's dominance as an eBook retailer."  R&R at 32.

Plaintiffs also conspicuously fail to contest key R&R findings that fundamentally differentiate this case from *Apple*.  Plaintiffs do not contest that here, unlike *Apple*, there are no allegations of any communications, meetings, or conversations among the Defendants, much less communications supporting their conspiracy claim.  Indeed, the Magistrate Judge found that "the CAC contains no allegations whatsoever of interfirm communications between the Publishers or between the Publishers and Amazon."  R&R at 41.  As the Magistrate Judge explained, "given that all five Publishers were under the oversight of the Justice Department in 2014 or 2015, it is not plausible to infer from the mere allegation that some of the CEOs remained in place between the Apple conspiracy and 2015, that the Publishers, either amongst themselves or with Amazon, had meetings or conversations where they discussed concerted action."  R&R at 42.

Rather than addressing these findings, Plaintiffs instead offer only the rhetorical tactic of swapping in Amazon for Apple in their conclusory quotes from the *Apple* opinions, then stamp their argument QED.  Obj. at 3, 4, 15 ("All the Court need to do is swap out 'Apple' for 'Amazon' in the Report and Recommendation's recitation of the *Apple* case to draw the connection").  That is plainly insufficient.  From that fallacy, Plaintiffs then argue that the Publisher Defendants' and Apple's actions in 2010 allegedly forcing Amazon to accept the agency model provide "direct evidence" of a conspiracy with Amazon today.  Obj. at 7.  This entirely illogical construct is completely unsupported by any alleged facts.  Publishers' Motion at 3–4, 13–14.

Finally, Plaintiffs offer the red herring that Defendants did not exit their conspiracy because they did not admit to guilt in the final judgments.  Obj. at 2–3.  There is no legal requirement that defendants admit guilt to end a conspiracy.  *See Drug Mart Pharm. Corp.*, 288 F. Supp. 2d at 330

US 172556755

(affirmative acts ending a conspiracy "do[] not require an accompanying pronouncement of *mea culpa*").

## B.     Plaintiffs Fail to Plead Indirect Evidence from Which a Conspiracy Could Plausibly Be Inferred

The Magistrate Judge correctly found that Plaintiffs' allegations at best show that the Publisher Defendants engaged in lawful, parallel conduct by each independently entering an eBook distribution agreement with Amazon.  R&R at 42–43.  Plaintiffs neither pled circumstantial evidence of a horizontal agreement between the Publisher Defendants nor plus factors sufficient to support a plausible inference of conspiracy.

### 1.     Plaintiffs Fail to Plead Circumstantial Evidence of a Horizontal Agreement Among the Publisher Defendants

Plaintiffs fail to adequately plead facts sufficient to support the inference that there was a horizontal agreement among the Publisher Defendants that formed the "rim" among the spokes in their alleged hub-and-spoke conspiracy.  *Apple*, 791 F.3d at 314 n.15 (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203–04 (4th Cir. 2002)).  To properly plead a horizontal agreement forming the "rim" in a hub-and-spoke conspiracy, even Plaintiffs' favored case, *Laumann*, requires Plaintiffs to show that the Publisher Defendants' participation in the alleged conspiracy was "contingent upon [the] knowledge" that other Publisher Defendants were participating.  *Laumann v. NHL*, 907 F. Supp. 2d 465, 486–487 (S.D.N.Y. 2012).  As the Objection recognizes, Obj. at 8–9, Plaintiffs must show that the Publisher Defendants "would not have gone along with [the vertical agreements] except on the understanding that the other [spokes] were agreeing to the same thing." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 376 (S.D.N.Y. 2016) (quoting PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW: AN ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR APPLICATION, ¶ 1402c (3d ed. 2010)).

Yet Plaintiffs failed to plead any facts indicating that any Publisher Defendant's decision

to enter into its individual agreement with Amazon was contingent on other Publisher Defendants entering an equivalent agreement. Reply Br.[9] at 4–5. Indeed, Plaintiffs grossly misstate the R&R by claiming that the Magistrate Judge "found that Plaintiffs plausibly alleged that each Publisher Defendant agreed to the same contract to eliminate retail competition and raise eBook prices and knew that the others were negotiating or had negotiated the same terms with Amazon." Obj. at 9. The Magistrate Judge found no such thing. The Magistrate Judge found only that it was plausible to infer that the Publisher Defendants knew that other Publisher Defendants were entering into agency agreements with Amazon that contained MFN-like provisions, not because of anything any Publisher Defendant did or said, but because "Amazon had a history of demanding such clauses in its distribution contracts." R&R at 38. That's it. The Magistrate Judge certainly did *not* find that any Publisher Defendant entered into an agreement with Amazon contingent on other Publisher Defendants entering an equivalent agreement. Indeed, the R&R does *not* state that any Publisher Defendant knew anything about the specific terms of any other Publisher Defendant's agreement with Amazon, much less that the terms were the same.

To the contrary, the Magistrate Judge found that the only thing that could be inferred from Plaintiffs' allegations was parallel conduct, not any understanding between the Publisher Defendants that they were agreeing to the same terms. R&R at 38 ("The fact that the Publishers entered similar agreements with Amazon over the span of eight months does 'not constitute 'plausible grounds to infer an agreement' by the Publishers to conspire. . .'"). As the Magistrate Judge explained, the CAC "demonstrates that there were ample reasons for the Publishers to independently want to secure a distribution agreement with Amazon." R&R at 28; *see also* Reply Br. at 7. "[E]ach publisher had an independent economic incentive to both want agency pricing

---

    9    ECF No. 137, Reply in Further Support of Publisher Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint ("Reply Br.").

US 172556755

and a distribution agreement with Amazon, even absent a preexisting agreement to act collectively." R&R at 28–29.

Here again, Plaintiffs fail to specifically challenge key findings that undermine their argument that they alleged facts sufficient to infer a horizontal agreement among the Publisher Defendants. Plaintiffs do not contest the Magistrate Judge's finding that the Publisher Defendants' agreements with Amazon reflect independent parallel conduct responding to the market pressure to distribute through Amazon. R&R at 30–31. Rather than attacking this specific finding, Plaintiffs attempt to advance the strawman that it was "not in any Publisher Defendant's competitive self-interest to unilaterally restrict all eBook retailers from competing with Amazon on price." Obj. at 10. But the Magistrate Judge already rejected this argument, finding that "each Publisher could have rationally concluded that it was in its own self-interest to reach an agency agreement with Amazon, a crucial bookselling partner, to preserve its ability to distribute eBooks through the largest retailer in the United States, even if it required acceding to Amazon's request for an MFN clause." R&R at 30. Plaintiffs fail to explain how or why this finding is in clear error.

Finally, Plaintiffs' argument that the Magistrate Judge erred in assuming that "the industry had irretrievably ended the wholesale model" again mischaracterizes the R&R. Obj. at 9. *First*, the Magistrate Judge did not find that the wholesale model was "irretrievably ended." She simply noted correctly that the industry did not shift eBook distribution models in 2014-15. Unlike the 2010 agreements at issue in *Apple*, which moved the industry from the wholesale model to the agency model, the 2014-15 agreements did not reintroduce the agency model; the agency model was already in place. R&R at 29, 33; Reply Br. at 5. *Second*, the fact that the agency model was in place before and after the 2014-15 agreements is irrelevant to whether any Publisher Defendant had knowledge about the specific terms of other Publisher Defendants' agreements with Amazon

- 10 -

or any alleged common understanding among the Publisher Defendants about those terms.  Obj. at 9.  This fact merely highlights how the facts here are starkly different from the facts in *Apple*.

      **2.**      **Plaintiffs Fail to Plead Plus Factors Sufficient to Support a Plausible Inference of Conspiracy**

The Magistrate Judge appropriately found that Plaintiffs failed to plead plus factors from which the Court could plausibly infer a conspiracy.  R&R at 42 ("In short, whether viewed individually or collectively, the CAC alleges plus factors that are no more consistent with a conspiracy than with rational behavior independently adopted by the Publishers acting within a concentrated market.").  Plaintiffs' Objection merely restates the same plus factor arguments that Plaintiffs previously briefed, which the Magistrate Judge reviewed and rejected.  The Magistrate Judge's findings and conclusions about Plaintiffs' plus factor allegations are not clearly in error and should be upheld.

***Acting against unilateral self-interest***.  The Magistrate Judge properly found that Plaintiffs failed to plausibly plead facts supporting their conclusory allegation that each Publisher Defendant did not act in its independent self-interest in entering into its 2014 or 2015 eBook agency agreement with Amazon.  R&R at 25–31; *see also* Section I.B.I *supra*; Publishers' Motion at 18–19.

Rather than challenging specific findings in the R&R, Plaintiffs claim that the Magistrate Judge applied the "wrong test" to determine whether each Publisher Defendant acted against its independent self-interest because she did not examine whether each Publisher Defendant's actions would have contravened its self-interest "in a competitive market" in the absence of similar behavior by rivals.  Obj. at 9–10.  Plaintiffs' argument proceeds from a false assumption—that the U.S. retail market for trade eBooks is not competitive.  But Plaintiffs offered no factual allegations from which one could plausibly conclude that it is not.  The Magistrate Judge correctly found that

- 11 -

Plaintiffs alleged only parallel conduct reflecting "rational behavior independently adopted by the Publishers acting within a concentrated market."   R&R at 42–43.   As the Magistrate Judge explained, each Publisher Defendant had a significant independent incentive to enter into an agreement to distribute its eBooks through Amazon, the "dominant" eBook retailer, regardless of whether any other publisher entered such an agreement.   R&R at 28–29 (citing CAC ¶ 161). Indeed, if only one Publisher Defendant entered into an agreement with Amazon, it would have had a significant competitive advantage over its rivals: access to the 90% of the eBook market that Amazon allegedly controls.   Reply Br. at 7.[10]   Plaintiffs' argument that any Publisher Defendant would not have entered an eBook distribution agreement with Amazon unless other Publisher Defendants entered similar agreements is not only implausible, it is contrary to common sense. R&R at 42–43.

Plaintiffs' conclusory statement that each Publisher Defendant's actions were not in its self-interest unless a "critical mass" of other Publisher Defendants took the same actions also ignores the fact that the industry was already operating on an agency model for eBook distribution. Obj. at 10.   As the Magistrate Judge correctly concluded, the Publisher Defendants did not need to act together to achieve their purported goal of controlling eBook pricing; "the changed circumstances following the *Apple* conspiracy meant that the Publishers could 'achieve their goal of controlling trade eBook prices by acting alone.'"   R&R at 29 (citing CAC ¶ 162).

Finally, Plaintiffs' claim that it was not in any Publisher Defendant's interest to unilaterally raise prices is conclusory, supported only by a rote cite from *Apple*.   Obj. at 11.   That is an

---

[10]   Simon & Schuster gained this exact type of competitive advantage in 2014, signing a new eBook agreement with Amazon amid a well-publicized feud between Hachette and Amazon during which Amazon allegedly "slowed sales of Hachette authors' books" as a "negotiating ploy" to get Hachette to sign an eBook agreement.   *See* Reply Br. at 7–8; CAC ¶¶ 67–68 (describing the timing of Simon & Schuster and Hachette entering eBook agreements with Amazon); R&R at 29–30 (quoting articles cited in CAC ¶¶ 68, 70).

US 172556755

insufficient basis to find clear error here.

      ***Common motive to collude***.   Plaintiffs' Objection retreats from their argument that Defendants had "twin motives" to collude.  Opp. at 19.  Plaintiffs do not object to the Magistrate Judge's specific findings that these purported twin motives could just as easily have been achieved through parallel conduct without a preceding agreement.  R&R at 31.  Instead, Plaintiffs state in a conclusory, two-sentence paragraph that the Publisher Defendants had a common motive to "control[] trade eBook prices" and conspicuously say nothing about Amazon's purported motive.  Obj. at 14.

      Contrary to Plaintiffs' misleading spin, the Magistrate Judge found that the CAC "makes clear" that each Publisher Defendant had an "independent interest"—not a "common motive"—in controlling the price of its own trade eBooks.  R&R at 29 (citing CAC ¶¶ 51, 157).  Plaintiffs fail to explain the error, much less the clear error, in the Magistrate Judge's findings that the Publisher Defendants' "interest in setting and controlling the retail price of their eBooks is at bottom an interest in maximizing their potential profits"—an "interest universally shared by all businesses." R&R at 32.  As the Magistrate Judge explained, no collusion was necessary for each Publisher Defendant to control its eBook prices because the Publisher Defendants could each "achieve their goal of controlling trade eBook prices by acting alone."  R&R at 29 (citing CAC ¶ 162).

      ***Prior collusion***.   The R&R explains that evidence of prior collusion is not a plus factor here; instead, the *Apple* conspiracy demonstrates why collusion here is implausible.  R&R at 33–34; *see also* Section I.A. *infra*; Publishers' Motion at 12–15.  The Magistrate Judge correctly concluded that "even if a prior conspiracy were probative of a present conspiracy, the Publishers' conduct in the Apple conspiracy does not 'render more plausible' Plaintiffs' allegations that the Publishers colluded with Amazon, Plaintiffs' argument to the contrary notwithstanding."  R&R at

33.  Rather than grappling with this specific finding, Plaintiffs request that the Court simply recite *Apple* "swap[ping] out 'Apple' for 'Amazon'" and automatically find collusion.  Obj. at 15.  The facts alleged here show why that request is farcical.  *See* Reply Br. at 2.

*Market concentration*.  Market concentration is the only "plus factor" that the Magistrate Judge may have credited,[11] but the Magistrate Judge correctly concluded that this plus factor alone was insufficient to support the inference of a conspiracy.  R&R at 34–35.

In a footnote, Plaintiffs nakedly assert that the four largest Publisher Defendants "necessarily have a collective share of at least 64%."  Obj. at 16.  Plaintiffs did not properly plead this new market share statistic, denying the Magistrate Judge the opportunity to consider it, and they cite no basis for it.

*Price increase without corresponding increase in costs*.  The Magistrate Judge properly found that "the fact that the Publishers each raised prices creates an inference just as consistent with rational business behavior as it is with concerted action."  R&R at 35.  Plaintiffs' only rebuttal to this finding is restating its invented "in a competitive market" test.  Obj. at 16.  As explained above, Plaintiffs' purported test does not move the needle.  Thus, the Magistrate Judge correctly discredited this alleged plus factor as well; this finding is not in clear error.

*Deliberate mislabeling of MFNs*.  Plaintiffs continue to push their rejected argument that Defendants "disguised their MFN provisions as notice provisions" in order to circumvent the *Apple* final judgments and deceive DOJ.  Obj. at 17; Opp. at 25.  As the Magistrate Judge found, Plaintiffs' allegations do not "plausibly suggest that the Publishers attempted to hide the existence of their MFNs from antitrust regulators."  R&R at 36.

---

[11]   Publisher Defendants respectfully submit that Plaintiffs have not properly pled facts about the Publisher Defendants' market shares in the alleged relevant market (i.e., the retail sale of trade eBooks) sufficient to show market concentration.  Publishers' Motion at 3, 22–23; Reply Br. at 8.  As such, Plaintiffs also fail to allege this plus factor.

US 172556755

The Publisher Defendants did not hide or disguise any provisions in their eBook agreements in any way.  Reply Br. at 8.  Under the *Apple* final judgments, each Publisher Defendant submitted its eBook agreements to DOJ and certain state attorneys general for their review, including all the 2014-15 agreements alleged to contain MFN-like provisions.  Reply Br. at 8.  Plaintiffs do not contest that each eBook agreement that they complain of was given to and reviewed by DOJ and certain state attorneys general; instead, Plaintiffs claim that DOJ and those state attorneys general missed the provisions or did not understand them.  Opp. at 30; Oral Arg. Tr. at 58–59.  That is unfounded and implausible.  Reply Br. at 8.

Plaintiffs also misunderstand the R&R as stating that Plaintiffs failed to plead this plus factor because "they did not allege that Defendants put their MFNs in a side letter" as the defendants did in *Starr*.  Obj. at 17.  That is not what the R&R says.  In *Starr*, the court found that the plaintiffs hid their MFN by placing it in a secret side letter to avoid antitrust scrutiny.  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 319 (2d Cir. 2010).  Here, the Magistrate Judge properly drew the distinction that the alleged MFNs were not hidden because they were in the actual agreements that DOJ and certain state attorneys general reviewed, not hidden from antitrust authorities.  R&R at 36; *see also* Reply Br. at 8.

***Similar agreements entered within the span of months***.  Plaintiffs again attempt to align the alleged facts here to the facts in *Apple*, alleging that in both cases, "*most* Publisher Defendants" entered agreements with the hub within several months.  Obj. at 18 (emphasis added).[12]  Again, the facts here are different.  In *Apple*, all five of the conspiring publishers entered nearly identical

---

[12]   To support this spin, Plaintiffs misleadingly state that in *Apple* "five out of the six publishers" negotiated an agreement in a two-month time span.  Obj. at 18.  In *Apple*, *all* five conspiring publishers entered agreements with Apple nearly simultaneously.  The sixth publisher (Random House) was not a member of the alleged conspiracy and did not enter an agency agreement with Apple until a year later.  *See Apple*, 791 F.3d at 308, 309 n.12.

agreements with Apple in a three-day span.  Order, *United States v. Apple*, No. 12-cv-2826, at 7 (Sept. 5, 2012) ("The Publisher Defendants signed functionally-identical agreements with Apple from January 24–26, 2010.").  Here, the agreements were entered over the course of eight months, *see* CAC ¶¶ 67–71—intentionally staggered by Judge Cote so that the Publisher Defendants would not be negotiating with Amazon at the same time.  *See* Oral Arg. Tr. at 60; *see also* Plaintiff United States' Final Judgment, *United States v. Apple*, No. 1:12-cv-2826, at 5 (S.D.N.Y. Sept. 5, 2013) (staggering the expiration of the agreements between Apple and each publisher by six months).

***Opportunity to collude***.  The Magistrate Judge properly concluded that "because communications among the Publishers concerning eBook 'plans or strategies' were being monitored by the Justice Department, it is not plausible to infer, absent more factual detail, that the Publishers even had an opportunity to discuss or coordinate taking collusive action concerning their agency agreements with Amazon."  R&R at 42.

Plaintiffs argue that they still plausibly pled that the Publisher Defendants had opportunities to collude even with this government oversight during the alleged conspiracy period.  Obj. at 18.  But Plaintiffs cite no facts alleged in the CAC to support their conclusory argument. The main "support" Plaintiffs offer for this spurious argument is an irrelevant, misleading, out-of-context cite to *Starr*.  Obj. at 18 (citing *Starr*, 592 F.3d at 325).  Plaintiffs rely on *Starr* but they fail to address the Magistrate Judge's finding that the facts here are "in stark contrast to the facts alleged" in *Starr*.  R&R at 41.  As the Magistrate Judge explained, "in *Starr*, there were allegations from which one could infer that the defendants had an *opportunity* to 'communicate about pricing, terms, and use restrictions.'"  R&R at 41 (quoting *Starr*, 592 F.3d at 318).  Here, in contrast, the Magistrate Judge properly found that against the "backdrop of government oversight, the CAC alleges that 'Defendants had opportunities to collude,'" but it "provides no factual support to

- 16 -

underlie that conclusion."  R&R at 41 (citing CAC ¶ 159).

*          *          *

Plaintiffs do not properly object to any of the Magistrate Judge's findings and conclusions about Plaintiffs' conspiracy claim.  Consistent with those findings and conclusions, the Court should reject Plaintiffs' Objection and hold that Plaintiffs failed to plead a plausible conspiracy.

## II.  The Magistrate Judge Correctly Concluded that Plaintiffs Failed to Plead a Section 1 Claim Under the Rule of Reason

The Magistrate Judge properly concluded that Plaintiffs failed to allege a Section 1 claim that plausibly challenges each Publisher Defendant's vertical eBook distribution agreement with Amazon under the rule of reason.  R&R at 44–48.  Absent evidence of collusion, the rule of reason analysis for Plaintiffs' Section 1 claim against the Publisher Defendants focuses on the effect of each individual Publisher Defendant's eBook agreement with Amazon separately.  *See* Publishers' Motion at 20.  The Magistrate Judge correctly determined that Plaintiffs failed to state a rule of reason claim against the Publisher Defendants because Plaintiffs fail to plausibly allege that any Publisher Defendant's agreement with Amazon caused market-wide harm, R&R at 46–47, or that any individual Publisher Defendant had market power.  R&R at 47–48.

Notwithstanding these clear and correct findings and conclusions, Plaintiffs again resort to restating rejected arguments and making conclusory objections to try to revive their rule of reason claim.  Just as the Magistrate Judge did, the Court should reject Plaintiffs' arguments.

### A.  Agency Agreements with MFNs Are Not Inherently Illegal

Plaintiffs continue to mischaracterize *Apple* as suggesting that agency agreements with MFNs are inherently illegal if "agreed to by horizontal competitors" individually contracting with a vertical partner.  *See* Obj. at 19; Opp. at 6.  The Magistrate Judge resoundingly, and correctly, rejected that argument based on the rulings in *Apple* itself.

- 17 -

The R&R explains that in *Apple*, the district court found that "the terms of the agency agreements between Apple and the Publishers were not inherently unlawful."  R&R at 23 (citing *United States v. Apple*, 952 F. Supp. 2d 638, 698 (S.D.N.Y. 2013)).  While the court found that those agency agreements with MFNs violated Section 1, "the Second Circuit made clear [that] it was the particular circumstances that surrounded the execution of those agreements and supported a finding of concerted action . . . that rendered the agreements unlawful."  R&R at 22; *see also* Reply Br. at 3.  Here too "the distribution agreements between the Publishers and Amazon reflect contract terms that are not inherently unlawful." R&R at 23.  The Magistrate Judge correctly found that "[t]he mere fact that the Publishers entered into those agreements with Amazon is not direct evidence of a conspiracy to fix eBook prices and eliminate retail competition."  R&R at 23.

## B.     Plaintiffs Fail to Plausibly Allege Direct Evidence of Harm Sufficient to Support a Rule of Reason Claim

Plaintiffs argue that even absent circumstantial evidence of collusion, the Court can examine whether each Publisher Defendant's eBook distribution agreement with Amazon has an anticompetitive effect.  Obj. at 19–20.  Fair enough, but Plaintiffs go one step further, arguing in a conclusory, one-sentence paragraph that the Court should examine the *aggregate* effect of the Publisher Defendants' agreements with Amazon.  Obj. at 23 (emphasis added).  However, without facts plausibly suggesting collusion, the Court must apply a rule-of-reason analysis that looks at each Publisher Defendant's agreement with Amazon individually to assess whether it had a market-wide effect.  Publishers' Motion at 21 (citing *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 127–128 (2d Cir. 1995)).  After conducting that analysis, the Magistrate Judge properly found that Plaintiffs had not adequately pled market-wide harm.  R&R at 46–47.  "Absent some evidence of coordination, [] there are no plausible allegations in the CAC from which to infer that a single Publisher's agreement with Amazon led to a market-wide price increase

- 18 -

for trade eBooks." R&R at 46.

Plaintiffs acknowledge the authority supporting the Magistrate Judge's finding that aggregating the purported effects of the Publisher Defendants' agreements is not appropriate here. Obj. at 23 (citing *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com*, 985 F. Supp. 2d 612, 622 (S.D.N.Y. 2013); *Orchard Supply Hardware LLC v. Home Depot USA*, 967 F. Supp. 2d 1347, 1362–63 (N.D. Cal. 2013)). Plaintiffs do not even argue that the Magistrate Judge's finding was wrong. Obj. at 23.

Instead, Plaintiffs cite new, inapposite cases for the proposition that aggregating the effects of the Publisher Defendants' agreements is "the better approach" where "individual spokes are aware of and acquiesce in the anticompetitive conduct." Obj. at 23. The Court should not consider these cases that could have been, but were not, presented to the Magistrate Judge in the first instance. In any event, none of the cases Plaintiffs cite support aggregating the purported effects of the Publisher Defendants' agreements to establish market-wide harm. Contrary to Plaintiffs' contention, *Sitts* did not "hold" that "aggregation was permissible even without alleging a hub-and-spoke conspiracy." Obj. at 23 n.15. At most, *Sitts* indirectly suggests in dicta that considering the "aggregate impact of the alleged conspiracy's conduct" is appropriate where the defendants, like the two defendants in *Sitts*, function as a *single entity*. *Sitts v. Dairy Farmers of America, Inc.*, 417 F. Supp. 3d 433, 468 (D. Vt. 2019). Here, there is no basis for claiming that the Publisher Defendants function as a single entity. Similarly, *Applied Medical* aggregated the share of the market covered by exclusive contracts with *a single defendant* to show that the Plaintiffs were excluded from nearly all of the market. *Applied Med. Res. Corp. v. Johnson & Johnson*, No. SACV 03-1329-JVS, 2004 U.S. Dist. LEXIS 29409, at *12–13 (C.D. Cal. Feb. 23, 2004). Those

- 19 -

are not the facts alleged here.[13]

Plaintiffs also argue that "through its agreements with the Publisher Defendants, Amazon caused eBook prices to rise to anticompetitive levels." Obj. at 20. This conclusory argument is unmoored from any alleged facts. *See* Publishers' Motion at 21. Plaintiffs' main support for this argument is that this was the effect found in *Apple*. Obj. at 20. As discussed above, the Magistrate Judge correctly determined that this case is not *Apple*. Plaintiffs' desperate repetition of the case name will not change that fact.

### C.    Plaintiffs Fail to Plausibly Allege that Any Publisher Defendant Has Market Power

In the Objection, Plaintiffs continue to suggest that aggregating the Publisher Defendants' market share to show market power is appropriate. *See* Obj. at 20, 23. As the Magistrate Judge found, they are wrong. R&R at 46. Without facts supporting the inference of an agreement between the Publisher Defendants, R&R at 38, 43, the Magistrate Judge correctly analyzed whether the market share of each individual Publisher Defendant indicates that that Publisher Defendant has market power. Applying the basic math used by Judge Rakoff in *Bookhouse*, "any individual vertical agreement between a Publisher and Amazon would on average affect 14.4% of the trade eBook market." R&R at 48. "That share is far too small to suggest an ability to cause an adverse effect on competition market-wide"—in other words, too small to show market power. R&R at 48 (citing *Bookhouse*, 985 F. Supp. 2d at 622).

---

[13]    The third case Plaintiffs cite, *Genico*, a pre-*Twombly* case from a Texas district court, is inapposite as well. *Genico, Inc. v. Ethicon, Inc.*, No. 5:04-cv-229, 2006 U.S. Dist. LEXIS 96909 (E.D. Tex. Mar. 23, 2006). *First*, like *Applied Medical*, *Genico* is an exclusive dealing case where aggregation was allowed to show that the plaintiff was foreclosed from competing for a substantial percentage of the market. *Id.* at *13. Exclusive dealing and the standard for substantial foreclosure are completely irrelevant here. *Second*, *Genico* provides few if any facts from which one can determine how or why the court deemed aggregation appropriate. *Id.* at *11–15. *Third*, *Genico* applied the less stringent motion to dismiss standard then-applicable under *Conley*, not the modern standard under *Twombly*. *Id.* at *8–9. Aggregating the purported effects of multiple defendants' independently entered, vertical agreements to show market-wide harm does not pass muster under *Twombly*. Unsurprisingly, no other courts have adopted this extraneous district court decision. This Court should not either.

**III.    The Magistrate Judge Correctly Concluded that Plaintiffs Failed to Plead a Conspiracy to Monopolize**

The Magistrate Judge appropriately recommended dismissing Plaintiffs' conspiracy to monopolize claim because Plaintiffs failed to plausibly plead concerted action among the Publisher Defendants.  R&R at 48–49.  The Court should adopt the Magistrate Judge's recommendation and dismiss Plaintiffs' conspiracy to monopolize claim.

**A.    Plaintiffs Misstate the Legal Standard for a Conspiracy to Monopolize Claim**

Plaintiffs' Objection grossly misstates the elements of a conspiracy to monopolize claim.  *First*, Plaintiffs cite a Section 1 case, not a Section 2 conspiracy to monopolize case, to state —wrongly—that a conspiracy to monopolize claim requires only that the defendants "each agree to the general goal of the conspiracy" or to the "conspiracy's general nature and extent."  Obj. at 4, 26–27 (citing *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 1:13-cv-7789, 2022 WL 294118, at *54 (S.D.N.Y. Feb. 1, 2022)).  *Second*, Plaintiffs state that there is no requirement of an agreement for a conspiracy to monopolize claim, misleadingly suggesting that no concerted action among the defendants is required.  Obj. at 26.  That is incorrect.

Under Second Circuit law, a conspiracy to monopolize claim requires that Plaintiffs plausibly allege "(1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize."  *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 246 (2d Cir. 1997).  Plaintiffs utterly fail to meet this standard.  Publishers' Motion at 24–25; Reply Br. at 10.

**B.    Plaintiffs Fail to Plausibly Allege Concerted Action Among the Publisher Defendants**

As explained in Section I.B.1., the Magistrate Judge correctly concluded that Plaintiffs fail to plausibly allege that the Publisher Defendants engaged in any type of concerted action and thus, that Plaintiffs' conspiracy to monopolize claim should be dismissed.  R&R at 48–49.  Plaintiffs

- 21 -

fail to allege facts indicating that the Publisher Defendants had any type of agreement, much less an agreement as to the "general goal" of the alleged conspiracy.  Publishers' Motion at 24.

### C.      Plaintiffs Fail to Plausibly Allege that Any Publisher Defendant Had a Specific Intent to Confer Monopoly Power on Amazon

Plaintiffs must plausibly allege that Defendants had a "shared, specific intent to create a monopoly," *IHS Dialysis Inc. v. Davita, Inc.*, No. 12-cv-2468, 2013 WL 1309737, at *8 (S.D.N.Y. Mar. 31, 2013), not merely that the Defendants "each agree[d] to a general goal of the conspiracy." Obj. at 4.

Plaintiffs mischaracterize the Magistrate Judge as concluding that Defendants agreed that the "object of the alleged conspiracy was to 'entrench[] Amazon's dominance as an eBook retailer.'"  Obj. at 27 (quoting R&R at 32).  What the Magistrate Judge actually found was that "the CAC offers no plausible explanation for why the Publishers would have been motivated to participate in a conspiracy that further entrenched Amazon's dominance as an eBook retailer." R&R at 32; *see also* Publishers' Motion at 25.  "The CAC alleges no facts from which one could plausibly infer that the Publishers would benefit from immunizing Amazon from competition." R&R at 33.

As they did in their opposition brief, Opp. at 3, 27, Plaintiffs "borrow" language from *Apple*, replacing Apple with Amazon to "explain" why the Publisher Defendants would conspire to entrench Amazon.  Obj. at 3–4.  The Magistrate Judge has already heard, considered, and rejected Plaintiffs' arguments about the Publisher Defendants' purported motive to conspire with Amazon.  R&R at 32–33, 42–43; Oral Arg. Tr. 45–48, 63–65.  Plaintiffs have offered no basis whatsoever for the Court to depart from that well-reasoned and detailed analysis.

- 22 -

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those outlined in the Publisher Defendants' briefs, the Court should adopt the R&R and dismiss Plaintiffs' claims against the Publisher Defendants with prejudice.

Plaintiffs have already had ample opportunity to amend their complaint and have exhausted their right to amend.  Plaintiffs elected not to amend their CAC after Defendants filed their motions to dismiss.  Accordingly, consistent with Rule 3.D. of this Court's Individual Rules of Practice in Civil Cases, the Court should not give Plaintiffs leave to further amend the CAC to attempt to address its many, fatal deficiencies.

US 172556755

Dated:  September 14, 2022

 /s/ Margaret A. Rogers
Margaret A. Rogers
Saul P. Morgenstern
**ARNOLD & PORTER KAYE
SCHOLER LLP**
250 W. 55th Street
New York, NY 10019
Telephone: (212) 836-7830
Facsimile: (212) 836-8689
margaret.rogers@arnoldporter.com
saul.morgenstern@arnoldporter.com

*Attorneys for Defendant Penguin Random
House LLC*

 /s/ Rich Snyder
Rich Snyder
**FRESHFIELDS BRUCKHAUS
DERINGER US LLP**
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
Telephone: (202) 777-4565
Facsimile: (202) 507-5965
richard.snyder@freshfields.com

*Attorney for Defendant Hachette Book
Group, Inc.*

Respectfully submitted,

 /s/ C. Scott Lent
C. Scott Lent
**ARNOLD & PORTER KAYE
SCHOLER LLP**
250 W. 55th Street
New York, NY 10019
Telephone: (212) 836-8220
Facsimile: (212) 836-8689
scott.lent@arnoldporter.com

*Attorney for Defendant HarperCollins
Publishers LLC*

 /s/ Joel Mitnick
Joel Mitnick
**CADWALLER, WICKERSHAM &
TAFT LLP**
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6555
Facsimile: (212) 504-6666
joel.mitnick@cwt.com

*Attorney for Defendant Macmillan
Publishing Group, LLC*

- 24 -

US 172556755

 /s/ Yehudah L. Buchweitz
Yehudah L. Buchweitz
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256
Facsimile: (212) 310-8007
yehudah.buchweitz@weil.com

Jeff L. White
2001 M Street, NW
Washington, DC 20036
Telephone: (202) 682-7059
Facsimile: (202) 857-0940
jeff.white@weil.com

*Attorneys for Defendant Simon &
Schuster, Inc.*

- 25 -

US 172556755