# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMAZON.COM, INC. EBOOK ANTITRUST LITIGATION | No. 1:21-cv-351-GHW-VF<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF THEIR CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS** |

As supplemental authority in further support of their consolidated opposition to Defendants' Motions to Dismiss the Second Amended Consolidated Complaint, ECF No. 194, Plaintiffs submit for the Court's consideration the attached recently issued decision in *Floyd v. Amazon.com, Inc., et al.*, Case 2:22-cv-01599-JCC (W.D. Wash.), which is the third of a trio of recent decisions to sustain antitrust claims against Amazon's operation of its online two-sided marketplace platform. *See also De Coster v. Amazon.com, Inc.*, 2023 WL 372377, at *5 (W.D. Wash. 2023); *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 986 (W.D. Wash. 2022).

DATED: June 21, 2023

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
   Steve W. Berman (*pro hac vice*)
Barbara A. Mahoney (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
barbaram@hbsslaw.com

*Interim Lead Counsel for the Proposed Class*

Joseph M. Vanek (*pro hac vice*)
Paul E. Slater(*pro hac vice*)
Eamon P. Kelly (*pro hac vice*)
Alberto Rodriguez (*pro hac vice*)
Blake Sercye (*pro hac vice*)
SPERLING & SLATER, P.C.
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200
Facsimile: (312) 641-6492
jvanek@sperling-law.com
pes@sperling-law.com
ekelly@sperling-law.com
arodriguez@sperling-law.com
bsercye@sperling-law.com

*Counsel for Plaintiffs and the Proposed Class*

- 1 -

- 2 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 21, 2023, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic Filing to all ECF registrants.

                                          */s/ Steve W. Berman*
                                      STEVE W. BERMAN

2023 WL 3891973
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington, at Seattle.

Steven FLOYD, individually and on behalf
of all others similarly situated, Plaintiff,
v.
AMAZON.COM, INC. and Apple Inc., Defendants.

CASE NO. C22-1599-JCC
|
Signed June 8, 2023

**Attorneys and Law Firms**

Ben Harrington, Pro Hac Vice, Benjamin Siegel, Pro Hac Vice, Hagens Berman Sobol Shapiro LLP, Berkeley, CA, Barbara Mahoney, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, WA, for Plaintiff.

Benjamin M. Mundel, Pro Hac Vice, Jonathan E. Nuechterlein, Pro Hac Vice, Sidley Austin, Washington, DC, Chad S. Hummel, Pro Hac Vice, Sidley Austin LLP, Los Angeles, CA, John Goldmark, MaryAnn T. Almeida, Davis Wright Tremaine, Seattle, WA, for Defendant Amazon.com Inc.

Brian Liegel, Pro Hac Vice, Weil Gotshal & Manges LLP, Miami, FL, Eric Shaun Hochstadt, Pro Hac Vice, Weil Gotshal & Manges, New York, NY, Mark Andrew Perry, Pro Hac Vice, Carrie Mahan, Pro Hac Vice, Sandra Nicole Booth, Pro Hac Vice, Weil Gotshal & Manges LLP, Washington, DC, Mark Steven Parris, Orrick Herrington & Sutcliffe LLP, Seattle, WA, for Defendant Apple Inc.

ORDER

John C. Coughenour, UNITED STATES DISTRICT JUDGE

 *1  This matter comes before the Court on Defendants' respective motions to dismiss (Dkt. Nos. 42, 43). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIED in part and GRANTS in part the motions for the reasons explained herein.

**I. BACKGROUND**[1]

Defendant Amazon, Inc. operates the world's largest online retail marketplace. (Dkt. No. 37 at 4, 12.) Defendant Apple Inc. is the world's largest technology company responsible for designing, manufacturing, and selling iPhones and iPads, among other products. (*Id.* at 4, 12.) In addition to selling products directly to consumers, it also sells products through third-party distributors, like Amazon. (*Id.*) In 2018, Apple and Amazon (hereinafter, "Defendants") signed an agreement, effective January 1, 2019, known as the "Global Tenets Agreement" ("GTA"). (*Id.* at 6.) The GTA required Amazon to allow only Apple-authorized sellers to sell Apple products on Amazon's marketplace. (*Id.*) In exchange, Apple would provide a steady supply of Apple products to Amazon at a discounted rate. (*Id.*) On February 26, 2021, Plaintiff Steven Floyd purchased an Apple iPad from the Amazon Marketplace for $319.99. (*Id.* at 12.) The price of this iPad was inflated due to the GTA, which "eliminate[d] or at least substantially reduce[d] the competitive threat posed by third-party merchants." (*Id.* at 5.) Prior to the GTA, there were hundreds of third-party Apple resellers active on Amazon. (*Id.* at 4.) Following the GTA, the number of sellers narrowed to just seven. (*Id.* at 6.) Plaintiff filed this putative class action on November 9, 2022. (Dkt. No. 1.) After Defendants moved to dismiss, (Dkt. No. 30, 32), Plaintiff amended his complaint. (Dkt. No. 37.)

Plaintiff brings a single claim for relief, an alleged violation of Section 1 of the Sherman Act which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. (*Id.* at 56.) Plaintiff contends the GTA is "a naked restraint and per se unlawful under the Sherman Act." (*Id.* at 5, 58.) In the alternate, Plaintiff argues it violates the "rule of reason." (*Id.* at 59.) On March 27, 2023, Defendants filed motions to dismiss. (Dkt. Nos. 42, 43.)

**II. DISCUSSION**

   **A. Legal Standard**
A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive, the complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged. *Id.* at 678. The plaintiff is obligated to provide grounds for entitlement to relief that amount to more than labels and conclusions of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although the Court must accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not be accepted. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). Along with the complaint, the Court may consider documents mentioned in the complaint that are central to the claims and of undisputed authenticity, *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006), and matters of judicial notice, such as public records and court documents, *see Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

### B. Discussion

*2 To plead an antitrust violation under Section 1 of the Sherman Act, a plaintiff must allege facts supporting the notion that (1) an agreement exists, (2) the agreement imposed an unreasonable restraint of trade through either a per se or rule of reason analysis, and (3) the restraint affected interstate commerce. *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 784 (9th Cir. 1996). That plaintiff must also plead a relevant market. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). Here, the parties do not dispute the existence of a contract [2] or the effect on interstate commerce. (Dkt. No. 51 at 16.) The only issue is whether the GTA imposes an unreasonable restraint of trade through either a per se or rule of reason analysis.

The rule of reason is the default standard for Section 1 claims, and it requires the antitrust plaintiff to "demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). The rule "weighs legitimate justifications for a restraint against any anticompetitive effects." *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1156 (9th Cir. 2003). In applying the rule of reason, the Court "reviews all the facts, including the precise harms alleged to the competitive markets, and the legitimate justifications provided for the challenged practice, and [ ] determine[s] whether the anticompetitive aspects of the challenged practice outweigh its procompetitive effects." *Id.*

Some types of restraints, however, have such "predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful per se." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). Per se treatment is proper only once "experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it." *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 344 (1982). To justify per se condemnation, a challenged practice must have "manifestly anticompetitive" effects and lack "any redeeming virtue." *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). The Supreme Court has "expressed reluctance to adopt per se rules where the economic impact of certain practices is not immediately obvious." *Dagher*, 547 U.S. at 5 (internal citations omitted). Plaintiff contends the GTA amounts to a "per se violation" of antitrust laws, or in the alternative, a violation under the less demanding "rule of reason" standard. (Dkt. No. 37 at 58–59.) The Defendants move to dismiss under either standard. (Dkt. Nos. 42, 43). The Court addresses each standard in turn.

1. Application of Per Se Rule is Inapt as Pleaded

The Supreme Court has distinguished between "agreements made between competitors (horizontal agreements) and agreements made up and down a supply chain, such as between a retailer and a manufacturer (vertical agreements)." *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 986 (W.D. Wash. 2022). Nearly every "vertical restraint" is "assessed under the rule of reason." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). Whereas "[t]ypically only 'horizontal' restraints ... qualify as unreasonable per se." *Id.* at 2283–84; *see also Arizona*, 457 U.S. at 348 n.18 ("horizontal restraints are generally less defensible than vertical restraints.")

Here, the parties dispute whether Defendants entered a "horizontal" agreement, as Plaintiff argues, or a "vertical" agreement, as Defendants argue. This issue turns on whether Defendants entered the agreement as "competitors" or "firms at different levels of distribution." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988). Plaintiff contends this case is "not about Apple independently selecting its trading partners or Amazon independently enforcing its own platform rules. It is about two horizontal

competitors agreeing to eliminate the competitive threat posed by hundreds of other horizontal competitors." (Dkt. No. 37 at 9.) The Court cannot agree with this characterization. See [Vasquez, 487 F.3d at 1249](). According to the facts as pled, "Apple designs, manufactures, and sells iPhones and iPads," (Dkt. No. 37 at 12), and Apple "distributes its products through two channels" otherwise known as a "dual distribution" strategy. (*Id.*) In the first level, "Apple maintains its own retails stores, including an online store and physical outlets. This is Apple's direct distribution channel." (*Id.* at 12.) At this level, Apple competes horizontally with other retailers of its products. (Dkt. No. 51 at 21.) In the second level, "Apple distributes its products through a network of third-party distributors[.]" (Dkt. No. 37 at 12.) In addition to supplying Amazon with products, "Apple reportedly has Authorized Reseller Agreements with Best Buy, Target, Staples, AT&T, and others." (*Id.* at 13.) At this level, Apple "stands in a vertical relationship with the retailers it supplies." (Dkt. No. 51 at 21.)

**\*3** Given these allegations, the Court finds that, although the Defendants may compete for the sale of products at a horizontal level, they are vertically situated as manufacturer and reseller **under the agreement at issue here**. (Dkt. No. 45 at 30.) The GTA provides the conditions for the sale of Apple products on Amazon's Marketplace by imposing restrictions on who may sell Apple products on Amazon's platform and under what specific circumstances. (*Id.* at 31.) The plain text of this agreement strongly suggests that Apple stands as a manufacturer and Amazon as a distributer in this particular relationship. While the Defendants may be horizontally situated in other circumstances, this does not automatically place all their dealings—particularly, their vertical ones—into a per se context.

This conclusion is consistent with Ninth Circuit precedent, which holds that the rule of reason—not the per se standard —typically applies in the context of "dual distribution" arrangements. See *[Dimidowich v. Bell & Howell, 803 F.2d 1473, 1481 (9th Cir. 1986)]()* (The Ninth Circuit has "categorized restrictions imposed in the context of dual distributorships as vertical and analyzed them under the rule of reason."); *[Frame-Wilson, 591 F. Supp. 3d at 986]()* (rejecting application of per se standard because relationship at issue was "a vertical arrangement because it involves different levels of the supply chain.") To rule otherwise would cut against well-established precedent protecting the rights and autonomies of manufactures. *See, e.g., [Krehl v.*

*Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1356-57 (9th Cir. 1982)]() ("Competition is promoted when manufacturers are given wide latitude in establishing their method of distribution and in choosing particular distributors.")

However, the analysis does not end here. Application of the per se rule "must be based upon demonstrable economic effect rather than ... upon formalistic line drawing" between the different types of restraints. *[Leegin, 551 U.S. at 887]()*. Plaintiff characterizes the GTA as a "naked restraint" and urges that prior judicial experience with these categories of restraints requires per se condemnation of the GTA. (Dkt. No. 37 at 5, 58.) Beyond this conclusory statement, though, Plaintiff has not made a showing that the restraint at issue is one that "courts have had considerable experience with," permitting this Court to "predict with confidence that [the restraint] would be invalidated in all or almost all instances." *[Leegin, 551 U.S. at 886]()*.

In fact, Plaintiff acknowledges that third-party sellers have not been altogether expelled from Amazon's Marketplace— akin to a traditional boycott. (Dkt. No. 51 at 23.) And the fact that "Apple and Amazon also compete at the retail level is a defining feature of the dual distribution system, not a fact supporting a pure horizontal agreement requiring the per se rule." (Dkt. No. 55 at 7.) *See [Laurence J. Gordon, Inc. v. Brandt, Inc., 554 F. Supp. 1144, 1152 (W.D. Wash. 1983)]()*. (explaining that a "finding of [horizontal] competition would not be significant" in light of dual distribution precedent and rejecting argument that restraint was a "group boycott.")

Therefore, given the complex nature of the business relationships between the parties and the challenged restraint at issue—a classic dual-distribution arrangement where a manufacturer provides its products to a reseller and also competes with that reseller for sales to customers — the Court finds the per se rules to be inapplicable in this case, at least as pleaded. *See [Leegin, 551 U.S. at 887]()* ("It should come as no surprise ... that [courts] have 'expressed reluctance to adopt per se rules with regard to restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious.' ")

2. Rule of Reason

**\*4** Defendants argue the Claim fails to satisfy the rule of reason because the FAC failed (1) to identify a relevant

market; and (2) failed to show anticompetitive effect (injury) in that market. (Dkt. Nos. 42 at 18–33, 43 at 15–30.) The Court disagrees for the reasons explained below.

a. Alleged Marketplace

Under the rule of reason Plaintiff must "allege that the defendant has market power within a 'relevant market.' " *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008). This, by definition, requires sufficient market control that the anticompetitive conduct actually injures a competitor or consumer. *Id.* But, at least in an antitrust case, this need not be pled with specificity. *Id.* An antitrust complaint survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect. *Id.* at 1045. And since the validity of the "relevant market" is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6), subject to factual testing by summary judgment or trial. *Id.*; *see also High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) (holding that "[t]he process of defining the relevant market is a factual inquiry for the jury.")

However, a complaint may be dismissed under Rule 12(b)(6) if the complaint's "relevant market" definition is facially unsustainable. *Newcal*, 513 F.3d at 1045. To avoid dismissal, the relevant market must be a product market and include the products at issue as well as all economic substitutes for the products. *Id.* It must include "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." *Id.* (quoting *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989)).

Here, Plaintiffs identify the market at issue as the two-sided "U.S. Online Marketplace", in which Amazon is one player among many. (Dkt. No. 37 at 32, 43.) Within that market, Plaintiff identifies a submarket for "smartphone transactions." (*Id.*) Plaintiff pleads facts to demonstrate that companies treat smartphones as a "distinct product line." (*Id.*) Using similar logic and facts, Plaintiff also identifies a submarket for "tablet transactions." (*Id.*) The Supreme Court has held that submarkets, "which, in themselves, constitute product markets for antitrust purposes," may exist within the broader product market. *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962.) Submarkets may be determined by "examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Id.* These indicia were not intended "as a litmus test, and subsequent decisions have made clear that submarkets can exist where only some of these factors are present." *Bon-Ton Stores, Inc. v. May Dep't Stores Co.*, 881 F. Supp. 860, 868 (W.D.N.Y. 1994).

Plaintiffs have provided sufficient "practical indicia" to allege, at a minimum, that the supposed submarkets here are not necessarily facially unsustainable. Plaintiffs allege that the smartphone and tablet submarkets are publicly recognized as distinct markets within the online marketplace by consumers and retailers, (Dkt. No. 37 at 34–39), that brick-and-mortar stores are not a reasonable substitute, (*id.* at 39), and that Amazon's marketplace has substantial market power that reverberates across all online marketplaces, (*id.* at 46).

**\*5** Defendant Apple, for its part, argues that Plaintiff's alleged market is both over-and-under-inclusive. (Dkt. No. 43 at 18–19.) It contends that the alleged market is over-inclusive because it purports to include "all retail goods" which are neither "reasonably interchangeable nor have 'cross-elasticity of demand' with the iPhones and iPads at issue." (*Id.* at 18.) And that it is under-inclusive because it "fails to capture many other avenues for a customer to purchase smartphones and tablets." (*Id.* at 19.) The Court is unpersuaded.

Plaintiff has alleged sufficient facts to (1) demonstrate why the proffered submarkets do not exclude any reasonable substitutes, (Dkt. No. 37 at 18), and (2) to support a distinction between the submarkets for iPhones and iPads and the rest of the goods sold on online marketplaces, (*id.*), even though the same products may be available in both. *See F.T.C. v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1040 (D.C. Cir. 2008) (holding that premium natural and organic supermarkets may constitute a submarket distinct from conventional supermarkets even if some of the products were available in both markets). As the court in *Whole Foods* explained, "[t]he fact that a customer might buy a stick of gum at a supermarket or at a convenience store does not mean there is no definable groceries market." *Id.*

Finding no "fatal legal defect," the Court cannot conclude, as Defendants argue, that the "relevant market" here is facially unsustainable. *Hicks*, 897 F.3d at 1120. Both Defendants dispute the facts as pled in the FAC, but the validity of the relevant market is a question reserved for a jury, and the Court makes no such determination here. *Newcal*, 513 F.3d at 1045; *see also GTE Corp.*, 692 F.3d at 790 (holding that "[d]efining the relevant market is a factual inquiry ordinarily reserved for the jury.").

b. Alleged Injury

Defendants further argue that Plaintiff failed to show injury to self and/or anticompetitive effect. (Dkt. Nos. 42 at 26, 43 at 24.) "A plaintiff may only pursue an antitrust action if it can show antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1055 (9th Cir. 1999) (internal citations omitted).

According to the FAC, Plaintiff purchased an Apple iPad on the Amazon Marketplace, and, but for the GTA, he would have "paid a lower price." (Dkt. No. 37 at 12.) Plaintiff claims the GTA "eliminated competitive resellers of Apple products" and "those eliminated sellers would have would have caused prices for these products, including the Apple iPad purchased by Plaintiff, to be lower." (*Id.*) Plaintiff has also pled facts to show the GTA had anticompetitive effects on the merchant side of the market, (*id.* at 24); on the consumer side of the market, (*id.* at 25); and that it reduced output, (*id.* at 28). This combined to benefit Defendants, (*id.* at 29), and harm consumers, (*id.* at 30). While Defendants assert the GTA, and its subsequent effects, are the result of pro-competitive and anti-counterfeit motivations, (Dkt. No. 42 at 26, 43 at 24), the Court will cannot address that countervailing fact at this time. *See SmileCare Dental Group v. Delta Dental Plan of California*, 88 F.3d 780, 783 (9th Cir. 1996) (holding that "[d]ismissal for failure to state a claim is appropriate where the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose.")

**\*6** Accordingly, the Court finds that, based on an application of the rule of reason, the facts as alleged would constitute an offense—regardless of how Defendants would prefer to frame them—and that they are sufficient to survive a motion to dismiss.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Dkt. Nos. 42, 43) are DENIED in part and GRANTED in part. The Court DENIES Defendants' motions to dismiss under a rule of reason analysis. The Court GRANTS Defendant's motions to dismiss Plaintiff's claim under a per se analysis with prejudice.

**All Citations**

Slip Copy, 2023 WL 3891973

---

**Footnotes**

1   Unless otherwise indicated, the facts below are based on allegations contained in the First Amended Complaint ("FAC") (Dkt. No. 37).

2   The Court incorporates by reference the GTA which was attached as an exhibit to Defendant Apple's sealed motion to dismiss. (Dkt. No. 45.)

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.