USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/2/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
 :
 :
 :
 :   1:21-cv-00351-GHW-VF
 :
IN RE AMAZON.COM, INC. EBOOK  :   ORDER
ANTITRUST LITIGATION,  :
 :
 :
 :
 :
 :
------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

On July 31, 2023, Magistrate Judge Valerie Figueredo issued a thoughtful and well-reasoned Report and Recommendation in this matter. Dkt. No. 212. In it, Judge Figueredo recommended that the Court grant in part and deny in part Defendants' motions to dismiss Plaintiffs' claims in this case. Dkt. Nos. 188, 190. Because the Report and Recommendation is sound, the Court adopts it in full and grants in part and denies in part Defendants' motions to dismiss.

**I.   BACKGROUND**

The Court refers to the July 31, 2023 Report and Recommendation, Dkt. No. 212 (the "R&R"), for a comprehensive description of the facts and procedural history of the case but will briefly review the procedural history relevant to these motions.[1]

The initial complaint in this matter was filed on January 14, 2021. Dkt. No. 1. A number of related cases asserting substantially identical claims followed quickly on its heels. On April 15, 2021, the Court appointed Hagens Berman Sobol Shapiro LLP as interim lead counsel in the various related actions. Dkt. No. 54. And on May 24, 2021, the Court entered an order consolidating the related actions and establishing a deadline for the submission of a consolidated amended complaint.

---

[1] Unless otherwise noted, the Court uses the capitalized terms defined in the R&R.

Dkt. No. 66.  Plaintiffs filed an amended complaint on June 2, 2021.  Dkt. No. 67.  Defendants moved to dismiss the complaint, Dkt. Nos. 96, 98, and Judge Figueredo issued a report and recommendation recommending that the Court grant the motions and dismiss all of Plaintiffs' claims, Dkt. No. 161 (the "First R&R").  The Court adopted the First R&R in full over Plaintiffs' objections but granted Plaintiffs leave to amend.  Dkt. No. 170 (the "First MTD Order"); *see also* Dkt. Nos. 166, 167, 168 (objections to First R&R and Defendants' responses).

On November 21, 2022, Plaintiffs filed a new amended complaint.  Dkt. No. 175 ("SACAC").  Amazon and the Publishers separately moved to dismiss Plaintiffs' claims, which Plaintiffs oppose.  Dkt. Nos. 188–191, 194, 203–204.  Following oral argument, Judge Figueredo issued the R&R, recommending that the Court grant in part and deny in part Defendants' motions to dismiss and:  (1) dismiss all Plaintiffs who did not purchase their eBooks from Amazon for lack of standing; and (2) dismiss Plaintiffs' Section 2 conspiracy to monopolize and Section 1 restraint of trade claims under the Sherman Act for failure to state a claim for relief.[2]  R&R at 36–37, 59.

Plaintiffs and Amazon separately object to substantially all of Judge Figueredo's conclusions in the R&R.  Dkt. No. 215 ("Amazon Obj."); Dkt. No. 216 ("Plaintiffs Obj.").  The Publishers filed a response to Plaintiffs' objections (Dkt. No. 218), Plaintiffs filed a response to Amazon's objections (Dkt. No. 219), and Amazon filed a response to Plaintiffs' objections (Dkt. No. 220).  With the Court's leave, Amazon and Plaintiffs filed a reply and sur-reply, respectively.  Dkt. Nos. 223, 226. On September 21, 2023, Plaintiffs filed a notice of supplemental authority.  Dkt. No. 217.  On February 6, 2024, Amazon filed a notice of supplemental authority (Dkt. No. 231), to which Plaintiffs responded (Dkt. No. 232).  The Court has reviewed the parties' briefing.

---

[2] Because these two are the only claims asserted against the Publishers, adoption of the R&R in full results in the dismissal of the Publishers from this case.

## II.     LEGAL STANDARD

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of receiving a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

When a party timely objects to a magistrate's report and recommendation, a district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). But where "the party makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error." *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) (quoting *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007)). "Further, the objections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal.'" *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). The Court also reviews for clear error those parts of the report and recommendation to which no party has timely objected. 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

## III.    DISCUSSION

For purposes of its evaluation of the R&R, the Court treats the parties' objections as sufficiently precise to merit *de novo* review. The Court has reviewed the briefing with respect to the motions to dismiss and the parties' objections and has conducted a *de novo* review of the arguments presented in connection with the motions to dismiss,[3] informed by the arguments presented in the

---

[3] No party appears to object to the R&R's recommendation that Count III of the SACAC, a conspiracy-to-monopolize claim under Section 2 of the Sherman Act, be dismissed. Accordingly, the Court has reviewed the R&R's analysis and conclusion as to that claim only for clear error and, finding none, the Court adopts

3

objections and the briefing responding to them.  Having done so, the Court rejects the Objections and adopts in full the thoughtful and well-reasoned R&R by Judge Figueredo.  The Court briefly addresses certain of the parties' specific objections below.

### A. Plaintiffs' Antitrust Standing

The R&R recommends the dismissal of 13 out of 15 Plaintiffs who purchased their eBooks from Amazon's rival eBook retailers and not Amazon as "indirect purchasers" lacking antitrust standing.  R&R at 34–37.  Plaintiffs object, arguing that the 13 "indirect purchaser" Plaintiffs are nonetheless direct purchasers from the Publishers.  Plaintiffs Obj. at 8–9.  Amazon separately objects to the recommendation that the Court not dismiss the claims of the two Plaintiffs who purchased eBooks from Amazon (the "Direct Purchaser Plaintiffs").  Amazon Obj. at 8–21.

Both sets of objections fail in light of the Supreme Court's decision in *Apple Inc. v. Pepper*, which held that iPhone owners had antitrust standing because they were direct purchasers of iPhone apps from Apple, who allegedly engaged in antitrust conduct in relation to iPhone apps.  139 S. Ct. 1514, 1520–21 (2019) (citing *Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977)).[4]  The Supreme Court rejected Apple's argument that the iPhone owners were not direct purchasers because the app developers were the ones to set the retail price of the apps and pay the allegedly inflated commission fees to Apple.  *Id.* at 1522.

First, Plaintiffs' insistence that the 13 Plaintiffs who purchased eBooks from non-Amazon retailers in fact purchased directly from the Publishers ignores the existence of the retailer, the intermediary between the Publishers and the purchasers.  The non-Amazon retailers from which these 13 Plaintiffs purchased their books are not alleged to be antitrust violators or co-conspirators,

---

the R&R in relevant part and grants the Defendants' motions to dismiss in part, dismissing Count III of the SACAC.  *See* R&R at 58.

[4] To avoid confusion, the Court refers to the Supreme Court decision in *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), as "*Pepper*" and the Second Circuit decision in *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015), as "*Apple, Inc.*"

as was the case in *Pepper*. Thus, the 13 Plaintiffs are "indirect purchasers" who fail to plead antitrust standing. *See, e.g.*, *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 141 (2d Cir. 2021) (holding no direct injury where defendant "enabled" others to raise fees, which plaintiffs paid to defendant's competitors).

Second, Amazon's argument that the commission the Publishers pay to Amazon[5] is not directly linked to the prices paid by Amazon's retail eBook customers was squarely rejected by *Pepper*, in which the Supreme Court noted:

> [W]e fail to see why the form of the upstream arrangement between the manufacturer or supplier and the retailer should determine whether a monopolistic retailer can be sued by a downstream consumer who has purchased a good or service directly from the retailer and has paid a higher-than-competitive price because of the retailer's unlawful monopolistic conduct.

139 S. Ct. at 1523. Amazon attempts to distinguish itself by arguing that it has no control over its eBook prices (according to the SACAC). Amazon Obj. at 9–13; *see also In re Am. Express*, 19 F.4th at 139–40 (explaining the "first-step rule," which requires a direct causal link to plead antitrust standing). But this is not a material distinction from the "who sets the price" argument that the Supreme Court rejected in *Pepper*, 139 S. Ct. at 1522. And, in any case, Amazon cannot disclaim any control over eBook pricing, given the alleged MFNs and other contractual terms that purportedly give Amazon considerable leverage over eBook pricing and terms. *See, e.g.*, SACAC ¶¶ 8–9, 58–96. As the R&R cogently explains, the SACAC adequately alleges that the Direct Purchaser Plaintiffs suffered an injury from higher-than-competitive prices on trade eBooks sold by Amazon, the alleged monopolistic retailer. R&R at 18–28. The Direct Purchaser Plaintiffs are also efficient enforcers under the four-factor balancing analysis for the reasons explained by the R&R. *Id.* at 28–34.

---

[5] In one instance, Amazon references commission fees that a *publisher* pays to *agents*. Amazon Obj. at 10–11. It is not clear why Amazon makes this argument. The "commission" addressed by the SACAC, and relevant to the analysis at hand, is the transaction fee that Amazon charges for eBooks sold on its platform. *See, e.g.*, SACAC ¶ 3.

Relatedly, Amazon disputes the R&R's definition of the relevant market. Amazon argues that the market affected by Amazon's (and the other Defendants') purported antitrust conduct is that of "business-to-business services" (*i.e.*, the provision of agency services for eBook sales) rather than that of the retail trade eBooks themselves and that, therefore, the purported injury suffered by the Direct Purchaser Plaintiffs—as purchasers of trade eBooks—occurred in a different market than the market affected by the alleged conduct. Amazon Obj. at 16–21; *see also* Dkt. No. 223 at ECF p. 5 (Amazon's reply brief). Amazon also faults the R&R for not addressing *In re Aluminum Warehousing Antitrust Litigation*, in which the Second Circuit held that purchasers of aluminum and aluminum products could not plead antitrust injury from an alleged conspiracy by derivatives traders and warehouse operator affiliates that resulted in higher prices for aluminum in the market. 833 F.3d 151, 154–56, 161–62 (2d Cir. 2016).

*Aluminum Warehousing* only further buttresses the conclusion that the Direct Purchaser Plaintiffs have adequately pleaded an antitrust injury, regardless of Amazon's attempts to parse the precise relevant market. While it is generally the case that "only those that are participants in the defendants' market can be said to have suffered antitrust injury," the Supreme Court has "carved out a narrow exception . . . for parties whose injuries are 'inextricably intertwined' with the injuries of market participants." *Id.* at 158. Under this exception, a plaintiff who suffers an injury "in the very market that is directly restrained" by the alleged wrongful conduct, even if not the actual market the defendants participate in, may still have antitrust standing. *Id.* at 161. The plaintiffs in *Aluminum Warehousing*, who failed to plead antitrust injury, had *not* transacted with the defendants or stored aluminum in the defendants' warehouses, but were merely purchasers in the general aluminum market that had experienced higher aluminum prices. *Id.* at 161–62. This is similar to the 13 Plaintiffs who, as explained, are dismissed as indirect purchasers.

The Direct Purchaser Plaintiffs, however, are situated differently: They transacted with

Amazon directly and allegedly paid a higher price to Amazon as a result of Amazon's purported antitrust conduct.[6]  Amazon attempts to break the causation chain by arguing that the actual alleged injury at issue was Amazon charging the Publishers high commission fees, which the Publishers then reacted to by raising the prices of eBooks.  Dkt. No. 223 at ECF p. 9.  But this ignores that the commission fees come out of the pocket of the purchasers of eBooks (and go into Amazon's pocket), who are therefore the most directly injured, and that the retail trade eBooks market is ultimately the target and reason for Amazon's purported antitrust conduct.  *See Aluminum Warehousing*, 833 F.3d at 160–61 ("[M]ost of the time when a putative plaintiff has suffered antitrust injury that is 'inextricably intertwined' with the injury the conspirators ultimately intended to inflict, it is because the conspirators used the plaintiff's injury as the 'means,' 'fulcrum,' 'conduit,' or 'market force' to realize their illegal ends.").  The Direct Purchaser Plaintiffs have pleaded antitrust injury that is "inextricably intertwined" with the purported antitrust conduct.

Accordingly, the Court rejects Plaintiffs' and Amazon's objections to the R&R on Plaintiffs' antitrust standing and adopts in full the thorough analysis contained in the R&R.  Amazon's motion to dismiss is granted in part to the extent that it seeks to dismiss the 13 Plaintiffs who did not purchase their eBooks from Amazon.[7]

### B. Amazon's Anticompetitive Conduct Under Section 2

The R&R recommends that Amazon's motion to dismiss Counts I and II of the SACAC, which assert claims of monopolization and attempted monopolization under Section 2 of the Sherman Act against Amazon, be denied as to the Direct Purchaser Plaintiffs.  R&R at 41.

---

[6] Amazon's purported antitrust conduct includes not only charging supracompetitive commission fees on eBook sales, but also discouraging alternative business models (such as print-and-eBook bundles or pay-as-you-read models), discouraging the development of enhanced or highly illustrated but work-intensive eBook products, and preventing (or deterring) Publishers from offering lower retail prices for eBooks on other platforms.  *See* SACAC ¶¶ 61–96.

[7] The Publishers did not move to dismiss for lack of antitrust standing.  *See* R&R at 16 n. 7.

7

Amazon's objections on antitrust standing grounds have already been addressed. Amazon also objects on the basis that Plaintiffs have failed to allege anticompetitive conduct because: (1) Amazon's contractual terms with the Big Five fall short of "most favored nation" ("MFN") clauses and are not anticompetitive; and (2) Amazon's transaction costs and the commission fees charged by other eBook platforms are not appropriate benchmarks for the commission fee Amazon charges the Publishers. Amazon Obj. at 21–25.

As ably explained by the R&R, Amazon's arguments fail at this pleading stage. Plaintiffs are entitled to all reasonable inferences drawn in their favor from their non-conclusory allegations. *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). The Court takes as true for the purposes of this analysis that: (1) Amazon's "notifications provisions" and other contractual provisions with the Publishers—though perhaps not technically MFN clauses on their face—impose material restrictions on the Publishers' ability to freely contract with other eBook retailers and therefore have anticompetitive effects, *see, e.g.*, SACAC ¶ 59 ("Amazon has continuously imposed contract provisions that effectively function as MFNs on book publishers."); and (2) Amazon's transaction costs in publishing each eBook and the comparative commissions charged by other eBook retailers support the inference that the fee Amazon charges to the Publishers is unreasonably high and supracompetitive, *see, e.g., id.* ¶¶ 99–100.

Accordingly, the Court rejects Amazon's objections to the R&R regarding Plaintiffs' Section 2 claims against Amazon and adopts in full the thorough analysis contained in the R&R. Amazon's motion to dismiss is denied as to Plaintiffs' Section 2 claims of monopolization and attempt to monopolize.

### C. Unreasonable Restraint on Trade Under Section 1

The R&R recommends that Defendants' motions to dismiss be granted as to Count IV of the SACAC, which asserts a claim under Section 1 of the Sherman Act for unlawful agreements,

combinations, and conspiracies in restraint of trade. R&R at 58. Plaintiffs split their objections to this recommendation into two separate buckets: (1) the Court should look at Amazon's agreements with the Publishers in the aggregate and find that Amazon is liable under Section 1; and (2) the Court should find that the SACAC adequately pleads a Section 1 *per se* horizontal conspiracy or "rule of reason claim[]" against the Publishers. Plaintiffs Obj. at 1. Both arguments fail, however, because the first argument depends on the second, and the second argument does not succeed.

First, to the extent that Plaintiffs' first argument asserts that Amazon should be held liable under Section 1 on its own, it is not clear that the law permits this. "To hold a defendant liable for violating § 1 of the Sherman Act, a district court must find a combination or some form of concerted action between at least two legally distinct economic entities that constituted an unreasonable restraint of trade." *United States v. Apple, Inc.*, 791 F.3d 290, 313 (2d Cir. 2015) (internal quotation marks and citation omitted). As a result, "purely unilateral conduct is illegal only under § 2 and not under § 1. . . . [R]estraint of trade without a conspiracy or combination is not unlawful under § 1." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767 n. 13 (1984); *see also Int'l Distribution Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 794 (2d Cir. 1987) (reversing jury verdict finding a Section 1 violation because a "[S]ection 1 conspiracy requires a *plurality* of actors agreeing to restrain trade" and the evidence only implicated one defendant, who hired other defendants but did not conspire with them (emphasis added)). "Circumstances must reveal a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012) (emphasis in original) (internal quotation marks and citations omitted). The R&R suggests that the mere existence of an agreement, such as the ones between Amazon and each Publisher, is sufficient to meet this requirement under Section 1. R&R at 54. But it is not clear to this Court that Amazon's separate, individual agreements with the Publishers can form the basis of a Section 1 violation unless the Publishers

9

were participants in an effort to unreasonably restrain trade in entering into such agreements.[8]  *See Int'l Distribution Ctrs., Inc.*, 812 F.2d at 795 ("[T]he salient point remains that plaintiff did not offer a scintilla of evidence that any of the [other defendants hired by the primary wrongdoer] knew of or participated in the predatory pricing scheme.").  *Cf. Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citing *Copperweld Corp.*, 467 U.S. at 769–71) ("Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons.").

In any case, regardless of whether one may assert a Section 1 claim against a single unilateral actor as a general matter, that is not the case before the Court today.  Plaintiffs' allegations and arguments squarely depend on an anticompetitive agreement among the Publishers (and Amazon), not a standalone unreasonable restraint of trade imposed by Amazon.  Notably, Plaintiffs allege that it was the *Publishers* who worked together and thereby "forced" the contractual terms of the conspiracy on an unwilling Amazon:

- "The Big Five . . . feared Amazon's growing power in the trade book industry and . . . that Amazon would render [the Big Five] obsolete by negotiating directly with authors and literary agents for rights.  To counter Amazon's growing power, the Big Five determined that they *needed to force Amazon* to abandon its competitive pricing model."

- "When Amazon refused their entreaties [for higher eBook prices], the publishers recognized the importance of coordinating their efforts to raise prices."

- "Through a coordinated effort, the Big Five *forced Amazon to accept* the agency model . . . .  After Amazon's unsuccessful attempt at retaliation, Amazon acceded to the Big Five's demands, but not before Amazon filed a complaint with the FTC."

- "[T]he Big Five promptly reintroduced the agency model by renegotiating their agreements with Amazon, thus reclaiming the right to set prices in furtherance of

---

[8] Plaintiffs cite to *Ohio v. American Express Co.*, in which the Supreme Court held that—following a bench trial—the credit card company American Express had not engaged in a Section 1 violation by including an "antisteering provision" (prohibiting the discouragement of using American Express credit cards) in its contracts with merchants.  585 U.S. 529, 550–51 (2018).  But this is neither controlling nor persuasive authority, as the Supreme Court was not asked to—and did not—actually address whether a Section 1 claim could be brought solely against American Express on the basis of its contracts with merchants; the Supreme Court merely assumed as much in reaching the conclusion that the plaintiffs had nonetheless failed to prove a Section 1 claim against American Express.

10

their ongoing conspiracy."

SACAC ¶¶ 125, 127, 134, 146 (emphases added) (footnotes omitted). At best, Plaintiffs allege that Amazon "*let the Big Five set their own high prices* because it faces no competition from other eBook retailers on price or product availability." *Id.* ¶ 181 (emphasis added).[9] According to Plaintiffs' own narrative of their case, any purported "restraint of trade" by Amazon asserted by Plaintiffs does not exist without a horizontal conspiracy among the Publishers.

Second, the Court agrees with and adopts in full the R&R's analysis concluding that the SACAC fails to plead a *per se* horizontal conspiracy among the Publisher Defendants. R&R at 41–53. The R&R's analysis is thorough and well-reasoned, and the Court need not repeat it here.[10] This also rules out Plaintiffs' hub-and-spoke conspiracy claim, which requires a vertical *and* horizontal conspiracy. *See Apple, Inc.*, 791 F.3d at 314 ("These arrangements consist of *both* vertical agreements between the hub and each spoke and a horizontal agreement among the spokes to adhere to the [hub's] terms . . . ." (emphasis and alteration in original) (internal quotation marks and citation omitted)).

What remains of Plaintiffs' Section 1 claim, then, is their "rule of reason claim[]"[11] against the Publishers, which is based on an assertion of a vertical conspiracy rather than a horizontal

---

[9] Plaintiffs also draw heavily from the Apple eBooks conspiracy with the Big Five. Notably, "the relevant 'agreement in restraint of trade' in [the Apple eBooks conspiracy] is not Apple's vertical Contracts with the Publisher Defendants . . . ; it is the horizontal agreement that Apple organized among the Publisher Defendants to raise ebook prices." *Apple, Inc.*, 791 F.3d at 323. The Second Circuit went on to explicitly comment: "How the law might treat Apple's vertical agreements in the absence of a finding that Apple agreed to create the horizontal restraint is irrelevant." *Id.* at 325.

[10] Plaintiffs' assertion that Defendants "picked up where they had left off" after the Apple eBooks conspiracy and continued with an Amazon eBooks conspiracy is speculative and conclusory—much less "direct evidence" of a conspiracy. Plaintiffs Obj. at 13–14. By contrast, the Apple eBooks conspiracy involved communications between Apple and the Publishers that showed that "Apple consciously played a key role in organizing their express collusion," including statements to the Publishers that "Apple would launch its iBookstore only if a sufficient number of them agreed to participate and that each publisher would receive identical terms . . . ." *Apple, Inc.*, 791 F.3d at 318; *see also id.* at 319 (noting district court's characterization of the evidence of Apple's collusion as "overwhelming").

[11] Plaintiffs also refer to the "quick look" analysis, which is "an abbreviated version of the rule of reason" analysis. *See Apple, Inc.*, 791 F.3d at 329–30.

11

conspiracy.  *See* SACAC ¶ 289 ("**Quick look/rule of reason:**  To the extent Defendants' conduct is determined to be a vertical price restraint . . . ."); *see also* Dkt. No. 194 at 38–43 (seeking rule of reason analysis "if carried out only by a series of non-conspiratorial agreements").  Notably, Plaintiffs' sole objection to the dismissal of the rule-of-reason claim is that, while the law is unclear on whether the vertical agreements for Publishers should be considered in the aggregate for the purposes of the rule-of-reason analysis, "the better rule permits aggregation."  Plaintiffs Obj. at 23.  The Court declines to adopt such an approach, in the absence of controlling law and a coordinated horizontal effort among the Publishers.

Accordingly, the Court rejects Plaintiffs' objections to the R&R on Plaintiffs' Section 1 claims against Amazon and the Publishers and adopts in full—except as modified by the Court's analysis above—the thorough analysis contained in the R&R.  Defendants' motions to dismiss are granted as to Plaintiffs' "restraint of trade" claims under Section 1 of the Sherman Act.

### D. Leave to Amend

Plaintiffs do not request leave to amend in the event that the Court were to grant Defendants' motions to dismiss in full or in part, and the R&R does not make a recommendation regarding whether leave to amend should be granted.  The Publishers argue that leave to amend should not be granted, noting that Plaintiffs have amended their complaint three times, once with the benefit of a thorough R&R and the Court's review, and have failed to address or cure the deficiencies already identified.  Dkt. No. 218 at ECF p. 7.  The Court agrees.

"It is the usual practice upon granting a motion to dismiss to allow leave to replead."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted).

The deficiencies identified in Plaintiffs' latest complaint are substantive, such as the lack of antitrust standing for 13 out of 15 Plaintiffs, and so amendment would be futile. *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[B]etter pleading will not cure [the complaint]. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Roundtree v. City of New York*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases). Plaintiffs have also already amended the complaint multiple times, including after the benefit of the Court's analysis on Defendants' first motions to dismiss—and yet some of the same core deficiencies remain without an indication of how Plaintiffs might correct them. *See, e.g., Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend sua sponte."); *see also TechnoMarine S.A.*, 758 F.3d at 506 (affirming denial of leave to amend where plaintiff already amended once following a motion to dismiss, failed to resolve its pleading deficiencies, and did not identify how it would cure its pleading deficiencies). In any case, Plaintiffs have not sought leave to replead, and "a district court has no obligation to grant leave to amend *sua sponte*." *See Transeo S.A.R.L.*, 936 F. Supp. 2d at 415 (citing *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)). Accordingly, Plaintiffs are denied leave to amend.

## IV. CONCLUSION

For the reasons set forth above and in the R&R, Defendants' motions to dismiss are GRANTED in part and DENIED in part. Plaintiffs who are indirect purchasers, *i.e.* those who did not purchase their eBooks directly from Amazon, are DISMISSED for lack of standing. Plaintiffs' Sherman Act Section 2 conspiracy to monopolize claim (Count III) and Sherman Act Section 1 restraint of trade claim (Count VI) are DISMISSED. This case remains referred to Judge Figueredo for all general pretrial matters, who the Court anticipates will determine the next steps in this matter.

The Clerk of Court is directed to (1) terminate the motions pending at Dkt. Nos. 188, 190

and (2) terminate the following parties from this case: Shannon Fremgen, Mary Christopherson-Juve, Denise DeLeon, Janet Ackerman, Robert Etten, Lawrence Twill, Thomas Agostino, Jordan Sacks, Mariacristina Bonilla, Ethan Silverman, Jeffery Tomasulo, Jeffrey Cook, Susan Cook, Cecily Lerner, Hachette Book Group, Inc., HarperCollins Publishers L.L.C., Macmillan Publishing Group, LLC, Penguin Random House LLC, and Simon & Schuster, Inc.

SO ORDERED.

Dated: March 2, 2024
New York, New York

GREGORY H. WOODS
United States District Judge