**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AMAZON.COM, INC. EBOOK ANTITRUST LITIGATION | No. 1:21-cv-351-GHW-GWG |

## PLAINTIFFS' SUR SURREPLY IN SUPPORT OF CLASS CERTIFICATION

**REDACTED**

010888-12/5029362 V2

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I.    Amazon's Sur-Reply Recycles the Same Flawed Arguments from Its
Opposition Brief............................................................................................................. 1

II.    Amazon's challenge to the $49.99 upper limit for Dr. McClave's analysis
is late and unfounded. ................................................................................................... 9

CONCLUSION.................................................................................................................. 10

010888-12/5029362 V2

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013)................................................................................................3

*City of Philadelphia v. Bank of Am. Corp.*,
 2023 WL 6160534 (S.D.N.Y. Sept. 21, 2023)........................................................9

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013)..................................................................................................6

*Local 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of N.Y.*,
 2024 WL 4276495 (S.D.N.Y. Sept. 24, 2024).......................................................4

*United States v. Apple Inc.*,
 952 F. Supp. 2d 638 (S.D.N.Y. 2013)....................................................................6

*United States v. Apple Inc.*,
 791 F.3d 290 (2d Cir. 2015)....................................................................................6

*United States v. Visa, Inc.*,
 788 F. Supp. 3d 585 (S.D.N.Y. 2025).....................................................................3

010888-12/5029362 V2

**INTRODUCTION**

By repeating arguments from its opposition brief, falsely casting as "new" arguments Plaintiffs raised in their opening brief, and providing expert evidence untethered to any argument on surreply, Amazon disregards the Court's order that limits Amazon's surreply to "arguments purportedly made for the first time in plaintiffs' reply brief" and permits Amazon's "supporting materials only to the extent that they support a specific response to purported new arguments in the reply brief," ECF 359. Regardless, nothing Amazon raises is material to the Court's class certification decision or refutes Plaintiffs' satisfaction of Rule 23 requirements.

**ARGUMENT**

**I.    Amazon's Sur-Reply Recycles the Same Flawed Arguments from Its Opposition Brief.**

The Court *should not* consider arguments Amazon already submitted in opposition to class certification and *need not* consider them because they are immaterial to the Court's decision on class certification.

*First*, Amazon's surreply starts by repeating its prior argument that its Discount Pool provisions cannot be a basis for antitrust liability. *Compare* ECF 364 ("Surreply") 1-2 *with* ECF 328 (Opposition brief ("Opp.")) 3-4. Amazon justifies its improper repetition of that argument by falsely claiming that Plaintiffs shifted their position on reply. Surreply 1. Amazon is wrong. Plaintiffs did not "abandon" their parity challenges, which remain relevant to Plaintiffs' demonstration of Amazon's monopoly power. ECF 300 (Class Certification Motion ("Mot.")) 20-24; ECF 301, Ex. 2 (Wickelgren Report) §6.4-§6.5; ECF 341 (Class Certification Reply ("Reply")) 1; ECF 342, Ex. 37 (Wickelgren Reply) §§2.1-2.2.

Nor is it true that Plaintiffs asserted for the first time on reply that the Discount Pool alone was sufficient to cause class members' financial losses. In fact, Prof. Wickelgren's opening report

§6.3.4 is titled: "The Discount Pool Provision functioned, with and without the other challenged provisions, as an effective PMFN throughout the Class Period." There, he opines that "Amazon's eBook contracts had" the same anticompetitive effects as PMFNs "throughout the Class Period *with and without parity provisions other than the Discount Pool* and under both versions of the Discount Pool." Wickelgren Report ¶224 (emphasis added). In a later section, Wickelgren's Figure 5 (titled: "Monthly Weighted Average Amazon and Big Five Publisher Prices, 2014-2023") "shows that there was no significant change in [eBook] price[s] in 2017 following the removal" of the other challenged provisions or when "modifying the Discount Pool in 2020." *Id.* ¶263 and ¶267. His opening report explains that "removal of those notification and non-price parity clauses in 2017 "had little practical effect [on inflated eBook prices] because ███████████ ███████████████████████████████ and demand under the discount pool provision, that the Publishers sell eBooks on Amazon's platform at terms equal to or better than the best terms available in the market." *Id.* ¶263. Table 4 shows ██████████████████ ███████████████████████████████ demonstrating that the 2020 ████ discount pool change did not alter Amazon's ability to earn supracompetitive commissions. Relying on Prof. Wickelgren's report and representative record evidence, Plaintiffs' class certification motion details how the Discount Pool is the primary mechanism by which Amazon controls prices outside of its platform to the detriment of competition and consumer welfare. Mot. 13-20.

*Second*, relying on inapposite, predatory pricing decisions, Amazon repeats its groundless argument that the Discount Pool claim is allegedly "expressly foreclosed by the Supreme Court" precedent regarding "price cut[s.]" Opp. at 24; Surreply 2-3 (arguing that the Discount Pool claim "run[s] headlong into Supreme Court precedents" providing a "safe harbor" for payments "to lower

prices"). Amazon's price-cost defense is a common legal question that applies equally to all class members and thus, need not be resolved at class certification because "there is no risk whatever" that a ruling adverse to the class "will result in individual questions predominating." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467-88 (2013).

As its own cases show, Amazon is also wrong on the merits. The requirement that a price challenged as predatory must be below cost ("price-cost test") applies to allegations of *predatory pricing*, which Plaintiffs do not assert (Plaintiffs' evidence of anticompetitive effect centers on price *increases*, not decreases). *See, e.g., United States v. Visa, Inc.*, 788 F. Supp. 3d 585, 608 (S.D.N.Y. 2025) (cited by Amazon) (declining to apply the price-cost test to claims involving discounting practices because the "Government does not allege that Visa violated the Sherman Act by setting prices too low, namely, by using predatory volume discounts; quite to the contrary, the Government contends that Visa's contracts deprived rivals of their ability to compete and thus allowed Visa to charge supracompetitive prices").[1] The challenged contracts in *Visa* were volume discount agreements with banks, which penalized the banks if their transactions on Visa's network fell below specified volume thresholds, so that even when competing networks offered lower fees, the penalties made it too expensive for the banks to switch. *Id.* at 613. The court declined to treat the claim as a "species of predatory pricing" claims because the alleged anticompetitive effect of the defendant's discounting practice was that it impeded rivals' ability to compete even when they undercut Visa's price. *Id.* at 608, 614.

The same reasoning applies here, where the financial penalties Amazon levers against the publishers when their eBooks sell at lower prices outside of Amazon makes it virtually impossible for rival retail platforms to compete with Amazon on price. Mot. §IVA.1.b. The challenged

---

[1] Every other case Amazon cites asserts predatory pricing or bidding. Opp. 24; Surreply 2-3.

010888-12/5029362 V2

contracts decreased competition and raised prices by *reducing* competitive discounting by retailers, which occurred on ██████████████████████████████████

██████████████████████████████████████████████ *Id.* 12-13; Reply 11 n.59.

*Third*, Amazon reasserts its contention that the "████████████████ discount pools are distinct forms of conduct" that must be treated separately. Surreply 4; *id.* 4-6; compare Opp. 21 (Discount Pool variations represent "distinct factual and legal theories"); *id.* 21-24.[2] The relevant question for the Court, however, is not whether it finds Plaintiffs' evidence persuasive, but whether "Plaintiffs have provided significant proof that predominantly common answers will be determined via the class action approach, notwithstanding Plaintiffs' ultimate success or failure on the merits." *Local 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of N.Y.*, 2024 WL 4276495, at *5 (S.D.N.Y. Sept. 24, 2024) (cleaned up; quotations omitted).

Contrary to Amazon's false suggestion that Prof. Wickelgren relies on a single email and a single analysis to prove the continuity of impact from the ████████████████ discount pool,[3] Surreply 4-6, Plaintiffs amply demonstrate that the continuity of effects of Amazon's conduct over the Class Period is a common question. *See* Mot. §IVA.1.b (summarizing expert and record

---

[2] Amazon repeats its argument that all contracts are unique and cannot be adjudicated collectively. Surreply 1-2; Opp. §2. This has been thoroughly briefed and does not warrant repeating. *Compare* Mot. 6-29; Reply §I.

[3] Amazon's objection to Prof. Wickelgren's small window analysis depends on a fiction that his deposition testimony deviated from his written report. Surreply 6. Contrary to Amazon, he testified, as he did in his report, that "an implicit MFN" belongs to the category of agreements that seek to regulate behavior on a rival's platform, need not be "specifically [stated] in the contract," and can be gleamed from the contracting parties' behavior. ECF 365 Ex. 15 (Wickelgren Excerpts) 142-43; Wickelgren Report §3.1.3 (relying on a publication by Nobel-Prize-winning economist Jean Tirole). He testified that the ████ Discount Pool is an implied PMFN because ██████████ ████████████████████████████████████████████████████ ████████. Wickelgren Excerpts 242-43.

010888-12/5029362 V2

evidence of anticompetitive effects of the Discount Pool throughout the Class Period); ECF 301, Ex. 2 (Wickelgren Report) §6.6.3 (under the ███ discount pool, Amazon continued to ███ ███████████████████████████████████████ ███████); *id.* ¶266 (███ pools remained at least as large as "███████████████████ ██"); *id.* ¶265 (the ███ pool "continues to provide … Amazon the power to maintain high fees and control eBook prices"); Amazon and its expert ignore that Prof. Wickelgren conducted not only 2-week, but also 4-, 5-, and 10-week studies, each showing that changing the Discount Pool to a ███ pool did not alter the clause's anticompetitive effects, ECF 342, Ex. 37 (Wickelgren Reply), Figures 21, 22, and 23; §2.5 (discussing these demonstrations); *id.* ¶34 ("While Dr. Korenko does mention differences … with regard to … the change in the discount pool provision in 2020, he does not provide any evidence or arguments showing that these [changes] either mitigated the anticompetitive effects of the 2015 agreements or produced any significant heterogeneity in their effects on the class."); *id.* ¶33 n.41 (relying on Amazon documents demonstrating the continuity of the purpose and effect of the ████████ discount pool that "[a]s publishers migrated to the new Discount Pool model, ██████████████████ " Besides changing from a ████████ discount pool, ███████████████████ ███████████ ;" and that the "new pool for customer discounting … ████████ █████████████████████████████ [.]").[4]

Relatedly and without even attempting to show that it is responding to a "new" argument in reply, Amazon raises a false equivalence between its ███ pool and HSOR contracts. Surreply

---

[4] Prof. Wickelgren's additional analyses in his reply report respond to Dr. Korenko's opinion that Prof. Wickelgren's common method of demonstrating anticompetitive effect purportedly does not apply over the entire class period. Reply ¶7 n.7; ECF 330 Ex.1 (Korenko Report), ¶¶20, 159, 162 and 180.

010888-12/5029362 V2

3. This frivolous argument ignores that retail-level price competition under HSOR *benefitted* publishers financially—███████████████████████████████████████████████

███████████████████████████████████████████. *See* ECF 301, Ex. 12 (Amazon_eBooks-0351881 at '885) ██████████████████████████████████ for this very reason.). But under Amazon's ██████████ Discount Pools, price competition is financially *detrimental* for publishers whose ███████████████████████████████ When their eBooks sell at lower prices at other retailers and Amazon matches the lower price, as it routinely does, █████████████████████████████████. That financial penalty has deterred both retail price competition and discounting under the ████████████ discount pools. Mot. 12-13; Reply 10-11.

*Fourth*, Amazon reasserts its argument that agency agreements can never create anticompetitive conditions. Surreply 7; Opp. 25-26. Like the preceding price-cost issue, this is both wrong on the merits and, as a common legal question, unnecessary to decide at class certification. Amazon relies on this false premise to argue that *Comcast Corp. v. Behrend*, 569 U.S. 27, 37 (2013), requires Plaintiffs' damages model to carve out the purportedly "legal" agency aspect of the challenged contracts from the challenged conduct. Opp. 25-26; *compare* Reply §II.D. It cannot be disputed that Dr. McClave's model, which compares transactions under the HSOR agency agreements to transactions under the challenged contracts, isolates the challenged conduct from the effects of *that* (HSOR) agency arrangement, which permitted retailer discounting. What Amazon *really* seeks is a ruling—contrary to *United States v. Apple Inc.*—that antitrust laws do not apply to agency agreements that *deter* retailer discounting. 791 F.3d 290, 336 (2d Cir. 2015) (upholding consent decree against Big Five Publishers that "prohibit[ed] them from restricting any retailer's authority to set prices"); *see also* 952 F. Supp. 2d 638, 694 (S.D.N.Y. 2013) (holding that

-6-

Apple's agency agreements had no "pro-competitive effects" and "destroyed" competition, e.g., by "remov[ing] the ability of retailers to set the prices of their e-books and compete with each other on price, [and] reliev[ing] Apple of the need to compete on price").

Relying on deposition snippets, Amazon falsely declares a rift between Plaintiffs and their experts. Amazon claims that Plaintiffs' experts disavow Plaintiffs purported "new" theory of agency. Not so. Plaintiffs are aligned with Prof. Wickelgren that they "are not challenging … the simple switch from wholesale or hybrid format" to "an agency agreement." Wickelgren Excerpts 122:12-15. Rather, Plaintiffs oppose Amazon's contention that agency arrangements are *per se* lawful and that any "agency" aspect of the agreements must be carved out of the damages model, an opinion neither of Plaintiffs' experts holds. Reply §II.D; ECF 365, Ex. 16 (McClave Excerpts) 261-62 (offering *no* opinion on agency arrangements). As the *Apple* decision holds, agency arrangements combined with a PMFN can have *very* harmful effects.

*Fifth*, Amazon repeats its expert's opinion that Dr. McClave's demonstration, showing ██████████████████████████, is purportedly unreliable because her analysis eliminated inconsistently identified publisher promotions and non-class transactions under $4, and if included, the percentage of uninjured consumers (including non-class members) ██████ ██. Surreply 8-10; Opp. 2, 10-14, 20-21.

Amazon falsely claims that neither Plaintiffs nor Dr. McClave are willing to own the decision to exclude eBook purchases at prices below $4. Surreply 8-9. Again, the dispute is a fabrication. Dr. McClave's assignment requires her to isolate the effects on class members of Amazon's conduct from other market forces affecting prices, such as discretionary publisher discounting, and Amazon's inconsistent identification of eBooks sold at prices reduced by publisher promotions made this infeasible. Reply 7; McClave Reply §3.1.1. When Dr. McClave

-7-

determined that ███████████████████████████████████████, Plaintiffs' counsel made the call to modify their class definition to exclude eBooks priced below $4. Mot. 2; Reply 8; McClave Reply §3.1.1. Removing those transactions was thus both an effective solution to address flawed data and an approach consistent with her assignment to measure the impact on class members. McClave Reply §3.1.1. As Plaintiffs argued, courts recognize that data "cleaning" to remove inconsistencies in the data and data unrelated to contested transactions is a standard process for regression analyses. Reply 7 and cases discussed in notes 35-36. And courts encourage plaintiffs to amend their class to conform to their expert's demonstration of common injury to ensure that only those most likely to have been damaged are included. Reply 8 and cases discussed in n.43.

To rebut Dr. Korenko's opinion that 8% of class members were uninjured, Dr. McClave demonstrated that Dr. Korenko's own modified version of her model was deeply flawed and unreliable (e.g., his model "███████████████████████████████████ ████," was ███████████████████████████████ than Dr. McClave's model; and introduces omitted variable bias, attributable to Dr. Korenko's admitted failure to include indicator variables for the publisher discounts). ECF 350 (McClave Corrected Reply Report ("McClave Reply")) 8 and n.34; Korenko Report ¶83. To demonstrate the reliability of her own findings, Dr. McClave conducted two robustness tests. Both include the transactions of "eBooks with prices under $4.00 and the transactions flagged by Amazon as Publisher promotions," but use two different approaches to identify the latter. *Id.* 9. After including a factor to indicate whether the transaction was subject to a promotion, these robustness tests corrected the omitted variable bias in Dr. Korenko's model and resolved the nonsensical relationship between demand and price. With these corrections, his model shows that ███████████████████████

010888-12/5029362 V2

███████████—a rate ████████████ the rate indicated by Dr. McClave's model. *Id.* 9-11, Exhibits 2 and 3. This also aligns with Prof. Wickelgren's Simulation Analysis of Class-Period Consumer Harm (Wickelgren Reply §5.1 ██████████████ )), which Dr. Korenko never addresses.

While Amazon falsely characterizes McClave's robustness tests as her "new models" offered on reply, Surreply 9, Dr. McClave's reply expressly disavows them as "her" models, opining that the corrected versions of Dr. Korenko's model are less reliable than her original model, which she stands by. McClave Reply 11. Amazon's manufactured complaint that Dr. McClave should have used a different technique to correct Dr. Korenko's model (a single publisher discount variable rather than her bespoke variable to indicate variations) is immaterial.[5] The court in *City of Philadelphia v. Bank of Am. Corp.,* found no authority that permits a court to look at anything "other than [the plaintiffs'] model itself to determine whether the model impermissibly masked uninjured plaintiffs[.]" 2023 WL 6160534, at *7 (S.D.N.Y. Sept. 21, 2023), *aff'd sub nom. City of Philadelphia v. Banc of Am. Sec. LLC*, 2025 WL 2180607 (2d Cir. Aug. 1, 2025). There, the court declined to evaluate defendants' evidence at class certification of "significantly higher 'non-injury' rates" that could only be shown through their expert's "*modified* versions of [the plaintiffs'] models," and the Court should do the same here. *Id.* at *8 (emphasis in original).

## II.    Amazon's challenge to the $49.99 upper limit for Dr. McClave's analysis is late and unfounded.

Amazon strategically chose not to raise in its opposition brief Dr. Korenko's contention that by removing eBooks priced above $49.99 (a price exceeding most trade eBook prices and

---

[5] Amazon and Dr. Korenko fault Dr. McClave's technique, but they do not explain why he presented a model with an acknowledged flaw, rather than correcting it himself. *See* Korenko Report ¶83; McClave Reply 8 and n.34.

expressly excluded from the class definition) Dr. McClave skewed her results. Korenko Report, Exhibit 6 and ECF 330 1-A (Korenko Appendices D and E). And for good reason; Dr. McClave's robustness test demonstrates that their removal, representing ███████████████████ ████████████, altered her results not a whit. McClave Reply §3.1.2. Yet inexplicably and in violation of the Court's order permitting "supporting materials only to the extent that they support a specific response to purported new arguments in the reply brief," ECF 359, Amazon submitted Dr. Korenko's surrebuttal where he repeats this unsubstantiated criticism untethered to any "new" argument or evidence. ECF 365 Ex. 17 (Korenko Surrebuttal) ¶¶6-9.

## CONCLUSION

Plaintiffs have satisfied their burden on class certification, and request that the Court grant their motion.

DATED: July 1, 2026

Respectfully submitted,
HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
       Steve W. Berman (*pro hac vice*)
Barbara A. Mahoney (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
barbaram@hbsslaw.com

Nathan Emmons (*pro hac vice*)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Email: nathane@hbsslaw.com

*Interim Lead Counsel for the Proposed Class*

010888-12/5029362 V2

Joseph M. Vanek (*pro hac vice*)
Paul E. Slater(*pro hac vice*)
Eamon P. Kelly (*pro hac vice*)
SPERLING & SLATER, P.C.
321 N. Clark Street, 25th Floor
Chicago, IL 60654
Telephone: (312) 641-3200
Facsimile: (312) 641-6492
jvanek@sperling-law.com
pes@sperling-law.com
ekelly@sperling-law.com

Phillip F. Cramer (*pro hac vice*)
SPERLING KENNY NACHWALTER, LLC
1221 Broadway, Suite 2140
Nashville, TN 37203
Telephone: (312) 224-1512
Facsimile: (312) 641-6492
pcramer@sperlingkenny.com

James Almon (*pro hac vice*)
SPERLING KENNY NACHWALTER, LLC
1616-D Metropolitan Circle
Tallahassee, FL 32308
Telephone: (850) 942-4334
jalmon@sperlingkenny.com

*Counsel for Plaintiffs and the Proposed Class*

I certify that this memorandum contains 2,991 words, in compliance with ECF 359.

/s/ *Steve W. Berman*
Steve W. Berman

-11-

010888-12/5029362 V2

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above document was served on ALL DEFENSE COUNSEL OF RECORD on July 1, 2026, via ECF.

/s/ *Steve W. Berman*
Steve W. Berman

-12-

010888-12/5029362 V2