UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
IN RE AMAZON.COM. INC. EBOOK ANTITRUST LITIGATION,

ORDER
21 Civ. 351 (GHW) (GWG)
---------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Before the Court are various motions to seal documents filed in relation to plaintiffs' motion for class certification. See Docket ## 348, 349, 361, 368, 379, 383, 390, 391, 392, 394, 396, 399, and 401. These consist of motions to seal purportedly commercially sensitive information contained in the parties' filings brought by the parties themselves, see Docket ## 348, 349, 361, 379, and 383; and by nonparties, see Docket ## 390 (Macmillan Publishing Group, LLC), 391 (Simon & Schuster, LLC), 392 (Hachette Book Group, Inc.), 394 (Penguin Random House LLC), 396 (HarperCollins Publishers L.L.C.); 399 (Apple Inc.), 401 (Barnes & Noble Booksellers, Inc.). All of the motions are unopposed.

We begin with the law applicable to sealing. Any documents filed in relation to plaintiffs' motion for class certification are "judicial documents," Ndugga v. Bloomberg L.P., 2026 WL 1042650, at *1 (S.D.N.Y. Apr. 17, 2026), to which a "presumption of access attaches," Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). Accordingly, "sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." Id. at 124 (citation omitted). To this end, a party seeking sealing on the basis of commercial sensitivity "must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." In re Parmalat Sec. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009).

We now turn to the various sealing applications.

Docket ## 348, 349, 361, and 379

These applications primarily concern the parties' memoranda of law. In Docket # 348, defendant Amazon.com, Inc., seeks to redact portions of plaintiffs' memorandum of law in support of class certification (filed under temporary seal at Docket # 300), defendant's memorandum of law in opposition (filed under temporary seal at Docket # 328), and plaintiffs' reply memorandum of law (filed under temporary seal at Docket # 341), along with a letter from plaintiffs' counsel dated April 20, 2026 (filed under temporary seal at Docket # 345). In Docket ## 361 and 379, defendant seeks to redact portions of the parties' respective surreply briefs (filed under temporary seal at Docket ## 364 and 370). In Docket # 349, plaintiffs seek to redact unspecified "portions of their class certification motion that discuss or cite documents produced by" various nonparties. Docket # 349 at 1.

The Court's ruling on these applications shall be governed by the Court's ruling on the applications discussed in the next section of this Order, which address the documents that are

cited in the memoranda of law. Thus, the Court directs that the memoranda of law (and other briefing papers) be redacted only to the extent they quote from or describe in detail any portions of documents addressed in the next section that the Court permits to be sealed or redacted.

Docket ## 383, 390, 391, 392, 394, 396, 399, and 401

These applications concern various exhibits attached to (and referenced in) the parties' briefing papers. Defendant asserts that "[t]he exhibits . . . contain nonpublic, proprietary, and confidential business information of Amazon and certain non-parties." Docket # 383 at 1.

Defendant's Requests to Seal

In Docket # 383, defendant seeks to seal (a) "contractual arrangements between Amazon and the Big Five Publishers" (namely, Hachette, HarperCollins, Macmillan, Penguin Random House, and Simon & Schuster) and (b) "internal sensitive and proprietary business information." Docket # 383 at 4.

Contractual Arrangements

Defendant has articulated to some degree compelling reasons to seal contracts between itself and the Big Five Publishers. As defendant's associate general counsel explains, "these contracts are maintained confidentially between the signing parties." Docket # 383-1 ¶ 6. Their disclosure to the public at large "would irreparably alter the competitive bargaining dynamic by showing competing publishers, and competing retailers, the terms to which Amazon and an individual Publisher agreed." Id. ¶ 7. Counsel elaborates:

> Because the competitive bargaining process for each contractual arrangement is unique, the negotiated contractual terms vary from publisher-to-publisher, and over time. For example, terms concerning how the parties share revenue from eBook sales and the services that Amazon commits to provide differ among the Publishers. Likewise, terms concerning Amazon's ability to discount eBooks have changed over time and have done so in different ways for different Publishers. Because the contractual arrangements vary for each Publisher, it is particularly likely that harm would result both from different contracting partners having access to one another's contracts, as well as from other retailers' access. Disclosure would provide an unfair advantage to publisher competitors, allow other retailers to undercut Amazon in negotiations with its counterparties, and violate the privacy interests of the interested third parties.

Id. The Court agrees that filings in this case should not "serve . . . as sources of business information that might harm a litigant's competitive standing." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). Accordingly, the Court will maintain the contracts under seal and allow redactions to exhibits which "describe, summarize, and analyze relevant contractual provisions," Docket # 383 at 4, but only to the extent these provisions have not already been made public by virtue of filings in this action.

With respect to the redactions defendant proposes to exhibits that "describe, summarize, and analyze relevant contractual provisions," Docket # 383 at 4, defendant's proposed redactions go too far in some respects.[1] For example, defendant would have the Court redact the actual name or designation of the contracts under scrutiny ("Tiered Seller of Record" or "TSOR") and the fact that discount pool provisions in these contracts were modified. "[R]edactions are approved only if narrowly tailored to the interest that justifies the redaction." Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., 2021 WL 1541385, at *3 (S.D.N.Y. Apr. 20, 2021). Although the Court accepts the need to keep confidential the specific provisions of these contracts, there is no need to hide the names of the contracts or the fact that their provisions have changed over time, or the broad nature of those changes.[2] Further, we cannot allow redaction of the very provisions at issue in this lawsuit relating to pricing, except insofar as specific numbers are involved. The parties have not demonstrated what competitive harm would result from disclosure of such information when it is already a matter of public record that defendant has had contracts with the Big Five Publishers whose provisions varied and that have already been described to a significant degree in the public filings in this matter.

Thus, we do not see a basis to redact the fact that discount pool provisions in certain of its contracts with the Big Five Publishers were at one point variable and at a later point fixed. See, e.g., Docket # 348-3 at 4. Nor do we see a basis to redact a discussion of how these provisions operated generally, although specific dollar amounts may be redacted, see, e.g., id. at 8 n.11, 23. We note that the fact that there were changes to these provisions is quite obvious from unredacted material already publicly available. See, e.g., id. at 8 (referring to discount pools being converted to into "specific annual dollar amounts that Amazon was permitted to use to discount the applicable Publishers' eBooks"); .e.g, Docket # 408-1 at 10 (describing the shift to "fixed discount pools"). Further, we see no identifiable harm in disclosing the dates of the changes to the provisions.

Business Information

Defendant has not fully overcome the presumption of access with respect to the material it asserts to be "internal sensitive and proprietary business information." Docket # 383 at 4. Defendant specifically seeks sealing of documents that reflect "competitively sensitive discounting decisions and the analysis that goes into making those decisions." Docket # 383-1 ¶ 5. According to defendant's associate general counsel, disclosure of such information "could cause defendant competitive harm because it could give competitors and negotiating counterparties an understanding of non-public analyses, strategies, data, and business decisions." Id. Beyond the fact that the information in these documents may not be public — a fact that is

---

[1] We are referring to the proposed redactions identified in the table at pages 5 to 29 of Docket # 383 as being related to "competitively sensitive contractual terms between Amazon and third parties."

[2] Moreover, the terms "Tiered Seller of Record" and "TSOR" are already public by virtue of the public filing of the Report and Recommendation on plaintiffs' motion for class certification. See Docket # 408-1 at 2.

not itself adequate to justify sealing, see Salomon Smith Barney, Inc. v. HBO & Co., 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001) — we are given no specifics as to why disclosure of the documents would cause competitive harm. Defendant's assertions of harm are to a large degree "conclusory and unilluminating," In re Parmalat Sec. Litig., 258 F.R.D. at 251 — and in marked contrast to the detailed explanation given of why disclosure defendant's contracts would cause competitive harm.

Nonetheless, we will permit defendant to make redactions to these documents to the extent they contain specific pricing information, which we accept is commercially sensitive. E.g., Nervora Fashion, Inc. v. Advance Mag. Publishers Inc., 2025 WL 406669, at *2 (S.D.N.Y. Feb. 5, 2025). But redactions are permitted as to pricing information only insofar as they concern specific contracts or arrangements with publishers. That is, we will permit redactions to specific prices because the precise figures have "little or no bearing on the merits of the parties' dispute," and redacting these figures "will not meaningfully hinder those monitoring" this case. Id. (quoting Banco Santander (Brasil), S.A. v. Am. Airlines, Inc., 2020 WL 4926271, at *3 (E.D.N.Y. Aug. 21, 2020)); see also Ndugga v. Bloomberg L.P., 2025 WL 2302089, at *2 (S.D.N.Y. Aug. 11, 2025) (finding it "self-evident" that "specific numbers" are "unimportant to the public and would incur relatively high costs to [defendant] and third parties if publicly filed"). Specific figures as to total number of sales in a particular year may also be redacted. Otherwise, the request to make redactions in the documents are denied as there has been an insufficient showing that revealing information such as average prices, Amazon's (as opposed to the other platform's) market share, overall revenue changes, internal discussions about the effect of Amazon's conduct and structures of contracts would cause competitive harm.

The Court notes that the fact that specific figures with respect to pricing may be redacted does not permit redaction of any material that aggregates pricing information. Thus, charts that aggregate such information may not be redacted. As a result, overall price trends or average prices may not be redacted.

Further, the fact there were publisher promotions has already been revealed, see, .e.g, Docket 408-1 at 23, 24 n.8, 25 n.9, and thus references to such promotions must not be redacted.

Non-Party Requests to Seal

We now turn to the applications to seal at Docket ## 390, 391, 392, 394, 396, 399, and 401, brought by various nonparties. As we consider these nonparty applications, we bear in mind that the "privacy interests of innocent third parties" must "weigh heavily" in our "balancing equation." United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) (citation and internal quotation marks omitted).

The applications brought by the Big Five Publishers (Docket ## 390, 391, 392, 394, 396) are similar in persuasiveness to the application by defendant. Thus, their requests for redactions are granted to the same extent as we have ruled above with respect to Amazon. As to the requests to redact their statements to the European Commission, we find that there has been an

insufficient showing of any competitive harm that would result from the revelation of such material that would outweigh the presumption of public access.

In Docket # 399, Apple seeks to redact portions of Docket ## 301-2/308, 330-1, and 342-1/350 which reveal "Apple's eBooks sales and pricing data" and "Apple's competitively sensitive contractual terms with third party publishers." Docket # 399 at 1. As set forth in the affidavit of Jennifer Milici, the "pricing considerations" reflected in Apple's eBooks sales and pricing data "remain relevant to Apple's contemporary pricing strateg[ies]," so disclosure of these data "could give competitors and customers an understanding of Apple's non-public pricing strategies." Docket # 400 ¶ 4. Meanwhile, Apple's contracts with third party publishers "are the product of detailed negotiations and reflect the outcome of a competitive bargaining process between Apple and each individual Publisher." Id. ¶ 5. "Because Apple's contractual arrangements can vary for each Publisher, public disclosure . . . would be harmful to the competitive bargaining dynamic," and because these contracts are confidential, disclosure "would also violate the privacy interests of the interested third parties." Id. The assertions of harm in this affidavit overcome the presumption of access, and we will allow the redactions specified in the table on page 5 of Docket # 399.

In Docket # 401, Barnes & Noble seeks to redact portions of Docket ## 301-2/308 and 342-2 "that quote, summarize, or otherwise reference Barnes & Noble's confidential and proprietary business information." Docket # 401 at 1. According to the affidavit of Barnes & Noble's general counsel, Docket ## 301-2/308 and 342-2 "quote or describe specific, non-public commission rates, marketing fees, co-op fees, and/or data fees contained in Barnes & Noble's confidential agreements with the Big Five [P]ublishers." Docket # 402 ¶ 5. Public disclosure of these terms "would reveal to competing retailers the precise economics of Barnes & Noble's relationship with each publisher, allowing competitors to calibrate their own negotiating positions accordingly" and "would reveal to other publishers . . . the terms Barnes & Noble agreed to with a given publisher, undermining Barnes & Noble's ability to negotiate individualized terms with each publisher." Id. ¶ 6. Docket ## 301-2/308 and 342-2 also "quote and rely on various communications between Barnes & Noble senior executives discussing pricing strategies and market analyses." Id. ¶ 7. It is asserted that public disclosure of these communications "would chill the candor of similar internal strategic discussions" and unfairly equip competitors with "Barnes & Noble's internal view of its own market position and that of its rivals." Id. ¶ 8. While we have not permitted redaction of internal discussions of Amazon, Barnes & Noble is not a party to this action and its internal discussions are of little or no importance to the issues being litigated. Thus, the assertions of harm in this affidavit overcome the presumption of access, and we will allow the redactions specified in the table on pages 4 and 5 of Docket # 401.

* * *

We will conclude by giving a few examples of what can and cannot be redacted based on a non-comprehensive review of the memoranda of law. This is not a complete list but rather represents examples intended to provide some guidance as to how to implement the ruling above (not only with respect to the memoranda of law but also with respect to the underlying documents):

Plaintiffs' Opening Memorandum:

p. vi: no redactions
p. viii: only the specific numbers to be redacted
p.1-2: Amazon internal analyses not to be redacted
p. 10 (non-footnote text): only the numbers to be redacted, except for Amazon's market share (which should not be redacted)
P. 12 and page 13 tables: only publishers' names to be redacted
p. 14 table: no redactions in table or legend
p. 14-15 text: no redactions
pp. 17-18 text: only specific numbers to redacted
p. 20 text: only specific numbers to be redacted

Defendant's Opposition Memorandum:

p. v-vi: only publisher names to be redacted
p. 2: specific numbers only
p. 4: no redactions
p. 6: text: no redactions (footnote: specific numbers only)
p. 7-8: text: specific number only
p. 15: no redactions
p. 16: number of discounted eBook sales may be redacted (and that same number represented as two factors in the second sentence of the first full paragraph)

Plaintiffs' Reply Memorandum:

p. 4: no redaction except specific numbers of book titles (but not the percentage of price matching)
p. 5: table should not be redacted

We emphasize we have not exhaustively examined the briefs. These are merely examples provided to make clearer what this Order permits to be redacted both in the briefs and in the other documents.

Conclusion

The applications at Docket ## 348, 349, 361, 368, 379, 383, 390, 391, 392, 394, 396, 399, and 401 are granted in part and denied in part as set forth above.

Defendant shall on or before September 30, 2026, (1) publicly refile the papers that require refiling in order to seal/redact only what is permitted by this Order; and (2) file under seal unredacted versions of these same papers that highlight the redactions permitted by this Order. For each of these two categories, the papers shall be filed as exhibits to a letter to the Court. The text of the docket entry for each refiled attachment shall contain a reference to the document's original docket numbers (for example, "Memorandum of Law In Support re: 299 Motion to Certify Class *Notice of Class Plaintiffs' Motion for Class Certification and Appointment of Class Counsel* (previously filed as Docket ## 300, 348-2, 360-1)").

Additionally on or before September 30, 2026, defendant shall file, with only the redactions permitted by this Order, a new version of the redacted Report and Recommendation (Docket # 405) as an attachment to a letter on the public docket and as a sealed document showing the redactions.

SO ORDERED.

Dated: September 9, 2026
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge